THE MORTGAGE BANKERS ASSOCIATION OF NEW JERSEY, A NOT-FOR-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENT, v. THE NEW JERSEY REAL ESTATE COMMISSION, APPELLANT, AND THE FIRST BOSTON CAPITAL GROUP INC., ELECTRONIC REALTY ASSOCIATES, INC., WEICHERT CO. REALTORS, WEICHERT MORTGAGE COMPANY, MERRILL LYNCH REALTY, INC., RICHARD L. SCHLOTT REALTORS, INC. AND GREATER METRO FINANCIAL SERVICES, INC., INTERVENORS-APPELLANTS.

Argued November 4, 1985—Decided April 8, 1986.

*Sarah T. Darrow,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*William J. Wolf* argued the cause for intervenors-appellants Weichert Co. Realtors, Weichert Mortgage Company, Richard L. Schlott Realtors, Inc. and Greater Metro Financial Services, Inc. (*Bathgate, Wegener, Wouters & Neumann,* attorneys for Weichert Co. Realtors and Weichert Mortgage Company and *Hogan & Palace,* attorneys for Richard L. Schlott Realtors, Inc. and Greater Metro Financial Services, Inc.; *Thomas A. Hogan,* on the brief).

*John B. Livelli* argued the cause for intervenors-appellants The First Boston Capital Group Inc. and Electronic Realty Associates, Inc. (*Robinson, Wayne, Levin, Riccio & La Sala,* attorneys for The First Boston Capital Group Inc. and *Weiner & Hendler,* attorneys for Electronic Realty Associates, *Robert B. Hendler,* of counsel; *Albert J. Peasco, Jr.,* on the briefs).

*John T. Dolan* argued the cause for intervenor-appellant Merrill Lynch Realty, Inc. (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys; *John T. Dolan, John H. Klock, David M. Hyman* and *Karen A. Giannelli,* on the brief).

*E. Robert Levy* argued the cause for respondent (*Levy and Lybeck,* attorneys; *E. Robert Levy* and *Clark E. Alpert,* on the brief).

*Arthur M. Greenbaum* submitted a brief on behalf of *amicus curiae* New Jersey Association of Realtors (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein,* attorneys; *Arthur M. Greenbaum* and *Jeffrey R. Surenian,* on the brief).

*Barbara S. Goldsmith,* Deputy Attorney General, submitted a brief on behalf of *amicus curiae* New Jersey Department of Banking (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*Josephine B. Urbelis* submitted a brief on behalf of *amicus curiae* New Jersey Savings League (*Apruzzese, McDermott, Mastro & Murphy,* attorneys; *Barry Marell,* of counsel).

The opinion of the Court was delivered by

STEIN, J.

In this case we are asked to consider the validity of a declaratory ruling by the New Jersey Real Estate Commission (Commission) that *N.J.S.A.* 45:15–17(i) [1] does not preclude a real estate brokerage firm that earns a commission from the seller in a real estate transaction from also receiving compensation for its role in placing or originating the mortgage financing necessary to consummate the real estate transaction. In a split decision, the Appellate Division reversed the Commission, holding that *N.J.S.A.* 45:15–17(i) prohibits a real estate broker from earning compensation for both the sale and mortgage compo-

---

[1] *N.J.S.A.* 45:15–17(i) prohibits a licensed real estate broker from

[c]ollecting a commission as a real estate broker in a transaction, when at the same time representing either party in a transaction in a different capacity for a consideration.

nents of the same transaction. The Appellate Division also concluded that the Commission erred procedurally in failing to decide the issue through the exercise of its rulemaking powers. 200 *N.J.Super.* 584 (1985). This appeal followed as of right. *R.* 2:2–1(a)(2).

■ We hold that the record before the Commission is insufficient to reflect either the diverse and complex economic factors pertinent to the issue or the overlapping regulatory interests of the Commission and the Department of Banking (Department).[2] Consequently, we reverse the judgment of the Appellate Division and remand the matter to the Commission and the Department to conduct joint hearings pursuant to the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –15, in order to produce a record sufficiently comprehensive to afford a proper basis for both agency action and judicial review.

I

The facts and procedural history of this matter are set forth at length in the Appellate Division's opinion. 200 *N.J.Super.* at 589–98. Accordingly, a concise summary is sufficient to describe the proceedings before the Commission that resulted in the declaratory ruling ultimately reversed by the Appellate Division.

In 1983 both the First Boston Capital Group, Inc. (First Boston) and the Mortgage Bankers Association of New Jersey (MBA), a trade association comprised primarily of mortgage bankers and mortgage brokers, asked the Commission for a ruling as to the proper interpretation of *N.J.S.A.* 45:15–17(i). First Boston had formulated a mortgage-financing program known as "Shelternet" to assist New Jersey real estate brokers in organizing mortgage-origination companies, either directly or through affiliates. First Boston anticipated that it would em-

---

[2]The Department is involved by virtue of the Mortgage Bankers and Brokers Act, *N.J.S.A.* 17:11B–1 to –20.

ploy its capital resources to participate in the New Jersey mortgage market by purchasing at a discount mortgage loans originated by the participating real estate brokers and their mortgage-company affiliates. First Boston requested the Commission to rule that its Shelternet program did not violate the Real Estate Brokers Licensing Act, *N.J.S.A.* 45:15–1 to –29.5 (Act), when the participating brokers placed mortgage loans with their affiliated mortgage company and simultaneously received commissions for effecting the related sales transaction. MBA sought a ruling from the Commission that the Shelternet program was prohibited by the Act.

When more than ten months elapsed without a reply from the Commission, MBA commenced an action in the Chancery Division against the Commission and appellant, Electronic Realty Associates, Inc. (ERA) and its affiliated mortgage company.[3] MBA alleged that ERA was violating the Act by allowing its affiliated mortgage company to pay fees to ERA's brokers and salesmen for referring to it the mortgage component of ERA real estate transactions. The suit sought to compel the Commission to prevent ERA from violating the Act. The suit was dismissed without prejudice when the Commission rendered its advisory opinion on April 24, 1984, in which it concluded that:

The Commission shall not consider it a violation of *N.J.S.A.* 45:15–17(i) when a duly licensed real estate broker receives fees for services rendered in more than one capacity in a single transaction.

MBA appealed to the Appellate Division, seeking a stay and reversal of the Commission's action. That appeal was resolved by a consent order that remanded the matter to the Commission for reconsideration on the basis of a plenary hearing.

In conducting the remand hearing, the Commission did not observe the rulemaking procedures of the Administrative Procedure Act, *N.J.S.A.* 52:14B–4, but acted instead under its

---

[3]ERA is an intervenor in this appeal. *See infra* at 180. Its affiliated mortgage company, ERA Mortgage, Inc., is licensed under the Mortgage Bankers and Brokers Act.

authority to issue declaratory rulings, *N.J.S.A.* 52:14B–8.[4]  The hearing commenced on June 12, 1984, eleven days after the consent order was signed.  Counsel for First Boston and ERA objected to the lack of adequate notice.[5]  Although counsel for First Boston and ERA attended the hearings, they called no witnesses.  The only testimony elicited during the two days of hearings [6] was from witnesses called by MBA.  At the conclusion of the hearings, the Commission voted 5–3 to reaffirm its prior advisory opinion.

The Appellate Division, which had retained jurisdiction over the matter, granted the applications of First Boston and ERA to intervene.  In reversing the Commission's declaratory ruling, the Appellate Division majority observed:

[T]he only question remaining is whether the broker's double compensation in receiving a commission from the seller and a consideration for placing or granting the buyer's purchase money mortgage loan comes within the statutory prohibition.  It does if the sale and mortgage transaction are, effectively, components of the same transaction and if the broker represents more than one party to the transaction.  The intervenors contend that the broker, in placing the mortgage, does not represent any party to the transaction other than the seller for two reasons: first, because the mortgage transaction is separate from the sales transaction, and second, because the broker in placing the mortgage

---

[4]*N.J.S.A.* 52:14B–8 provides in part that

an agency upon the request of any interested person may in its discretion make a declaratory ruling with respect to the applicability to any person, property or state of facts of any statute or rule enforced or administered by that agency.  A declaratory ruling shall bind the agency and all parties to the proceedings on the state of facts alleged.  Full opportunity for hearing shall be afforded to the interested parties.  Such ruling shall be deemed a final decision or action subject to review in the Appellate Division of the Superior Court.

[5]Subsequent to the June 12 hearing, the Commission sent notices to a number of interested real estate brokerage companies advising them that the hearings would be continuing on June 26 and inviting their participation.

[6]The Commission held hearings and met four times pursuant to the remand.  The first two meetings were for the hearing of witnesses and argument, and the last two were for the purpose of affirming and then reaffirming the ruling of April 24.

loan is paid by the lender or receives profit as the lender and does not therefore "represent" the buyer as borrower.

[W]e are convinced that the two transactions are so closely entwined, so interdependent and have so great a potential for conflict of interest and self-dealing on the part of the broker as to require the conclusion that at least for purposes of this statute they are each a part of the single, overall transaction which takes place when a purchaser buys real estate financed by a purchase money mortgage loan.

We are also persuaded that in that overall transaction a broker receiving a commission from the seller would also be "representing either party in a different capacity for a consideration" if he is also paid by the borrower or lender for his services in the mortgage transaction. [200 *N.J.Super.* at 601.]

Judge Brody, dissenting, agreed with the Commission's determination that *N.J.S.A.* 45:15–17(i) does not prohibit a real estate broker who receives a commission for the sale transaction from earning compensation directly or through an affiliate for placing or originating the related mortgage financing. However, Judge Brody believed that the Act would be violated if the real estate broker were compensated for assisting the buyer in placing the mortgage loan with an unaffiliated lender. *Id.* at 684.

The Commission and First Boston applied to the Appellate Division for a stay pending appeal. That application was denied except with respect to pending loan applications. Subsequently, this Court granted a partial stay of the Appellate Division's decision pending our disposition of this appeal.[7]

---

[7]This Court's stay applied only to the extent that:

A real estate broker compensated by a seller in [a] real estate transaction shall not be precluded during the pendency of this appeal, from placing a mortgage loan in such transaction with a licensed mortgage lender who, by virtue of common ownership, was affiliated with such real estate broker prior to April 26, 1985, provided;

1) the affiliation between the real estate broker and the mortgage lender is adequately disclosed to all parties;

2) the mortgagor has been advised of the right and afforded a fair opportunity to obtain mortgage financing from other sources;

3) except for such ownership affiliation, the real estate broker receives no compensation for placing such mortgage with the affiliated mortgage lender.

Prior to oral argument, we granted leave to several additional parties to intervene as appellants.[8] In addition, the New Jersey Department of Banking, the New Jersey Association of Realtors, and the New Jersey Savings League have been granted leave to participate as *amicus curiae*.

## II

We recognize that the issue presented is one of substantial public importance. Proponents of the Commission's declaratory ruling contend that a decision permitting real estate brokers to place or originate mortgage financing to facilitate transactions in which they earn compensation as selling brokers will enhance the supply of mortgage capital in New Jersey and benefit consumers by the inevitable increase in competition for mortgage loans. The mortgage-banking industry argues that the mortgage market is already well served, and that the conflict of interest inherent in the real estate broker's dual role as sales agent and mortgage broker/banker will disserve consumers by steering them into "captive" mortgage transactions at higher costs than those charged by independent mortgage bankers and brokers.

### A. The Regulatory Context

■■ It is undisputed that real estate brokers may also function, subject to licensure, as mortgage bankers or mortgage brokers. This dual function is expressly acknowledged by the Mortgage Bankers and Brokers Act, *N.J.S.A.* 17:11B-1 to -20, pursuant to which the Commissioner of Banking is authorized to regulate the business of mortgage bankers and mortgage brokers. Real estate brokers not engaged in the business of mortgage banker or broker are exempt from licensing under this act. The Mortgage Bankers and Brokers Act also exempts

---

[8]This Court granted leave to the following parties to intervene as appellants: Weichert Co. Realtors; Weichert Mortgage Company; Richard L. Schlott Realtors, Inc.; Greater Metro Financial Services, Inc.; and Merrill Lynch Realty.

those licensed as mortgage bankers and mortgage brokers from the "licensing and other requirements" of the Real Estate Brokers Licensing Act, *N.J.S.A.* 45:15–1 to –29.5. This exemption, however, is limited to the "performance of those functions authorized pursuant to [the Mortgage Bankers and Brokers] Act." *N.J.S.A.* 17:11B–2(d). Accordingly, the Legislature has apparently conferred primary jurisdiction over real estate brokers, to the extent that they are functioning as mortgage bankers or brokers, in the Department of Banking. As the Appellate Division noted, that Department would appear to have authority, as yet unexercised, to regulate real estate brokers in connection with their business activities as licensed mortgage bankers and mortgage brokers. 200 *N.J.Super.* at 608. To date, neither the Department nor the Real Estate Commission has attempted to regulate real estate brokers that act, in the same transaction, as both real estate brokers and mortgage bankers/brokers. Consequently, we focus, as did the Commission and the Appellate Division, on the provisions of *N.J.S.A.* 45:15–17(i) in the context of the facts on which the Commission's declaratory ruling was based.

## B. The Real Estate Broker's Function

A preliminary obstacle to our review of these proceedings is that neither the record before the Commission, its declaratory ruling, nor the Appellate Division opinion distinguishes sufficiently among the various methods by which real estate brokers might participate in and receive compensation from a mortgage transaction. In particular, neither the Commission's sanction nor the Appellate Division's broad proscription emphasizes the distinction between the role of a real estate broker engaged in *placing* mortgage loans, and that of a real estate broker engaged in *issuing* mortgage loans.[9] As noted, the initial

---

[9]The Mortgage Bankers and Brokers Act, *N.J.S.A.* 17:11B–1, defines three regulated roles in the provision of mortgage financing:

requests for rulings from the Commission, both by First Boston and MBA, focused on the assumption that the real estate broker would earn compensation in the mortgage transaction by acting as the *issuer* of the mortgage loan, either itself or through an affiliated company, and that the entity issuing the mortgage would be licensed under the Mortgage Bankers and Brokers Act. Neither First Boston nor MBA requested a ruling as to whether the real estate broker could be paid as a mortgage *broker*, either by the buyer or by an unaffiliated mortgage lender, for services rendered in placing the buyer's mortgage loan.

Although the litigation instituted by MBA against ERA alleged that payments for placing mortgages were being made by ERA's mortgage affiliate to ERA sales personnel, that litigation was dismissed when the Commission issued its initial ruling. As a result, no proof of MBA's allegations against ERA was introduced before the Commission. Therefore, the Commission's jurisdiction was apparently invoked to consider only whether a real estate broker who has earned a commission from a seller can function and be compensated in the same transaction as the *issuer* of the buyer's mortgage, either directly or through an affiliated company.[10]

---

c. "Mortgage banker" means any person not exempt under section 2 of this act, who for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly originates, acquires or negotiates mortgage loans in the primary market.

d. "Mortgage broker" means any person not exempt under section 2 of this act, who for compensation or gain, or the expectation of compensation or gain, either directly or indirectly negotiates, places or sells for others, or offers to negotiate, place or sell for others a mortgage loan in the primary market.

e. "Mortgage solicitor" means any person not licensed as a mortgage banker or mortgage broker, who performs any of the functions under subsection c. or d. of this section and who is employed by a mortgage banker or mortgage broker.

[10]The inquiry to the Commission was posited on the assumption that before the parties entered into the mortgage transaction, the real estate broker would

However, in the proceedings before the Commission, the three witnesses produced by MBA virtually ignored the issue posed by First Boston and focused instead on the undesirability of permitting a real estate broker to act as a mortgage *broker,* earning a fee from the buyer or the lender for placing the mortgage, in a transaction in which the real estate broker was also paid by the seller for effecting the sale.

The Commission broadly approved the right of real estate brokers to receive compensation from both the sales and mortgage components of the same transaction, subject only to the Commission's supervisory responsibility to "punish specific misconduct individually." The Commission's decision endorsed both the mortgage-origination proposal described in First Boston's request for a ruling as well as the mortgage-brokerage practices challenged by MBA's witnesses before the Commission, with only limited discussion of the distinction between the real estate broker's role as mortgage banker and mortgage broker. The Commission observed that *N.J.S.A.* 45:15–17(i) did not apply when the real estate broker originates the mortgage, since "he or she becomes a party, not a representative of a buyer." As to the real estate broker functioning for a fee as a mortgage broker or solicitor, the Commission noted:

> When a broker receives compensation for assisting in the placement of a mortgage, the compensation is paid by the mortgage originator, not the buyer. Thus, by receiving compensation for such services, the broker is not being paid for "representing" the buyer.

In reversing the Commission, the Appellate Division majority observed that whether the real estate broker was functioning as the mortgage issuer or the agent placing the mortgage loan, such functions were incompatible with the real estate broker's role as the seller's agent. The Appellate Division concluded that in either role, irrespective of disclosure or the source of

---

fully disclose, to both buyer and seller, its dual role, its anticipated compensation, the nature and amount of all fees involved in the mortgage transaction, and the fact that the buyer is absolutely free to obtain mortgage financing from another source.

compensation, the real estate broker would be "representing" the buyer for compensation while simultaneously earning a commission as the seller's broker, thereby violating the Act. Responding to the Commission's observation that a real estate broker placing a mortgage loan is paid by the lender and not the buyer, the court noted that such a charge was one that under the Mortgage Bankers and Brokers Act, "the mortgage banker can pass to the borrower." 200 *N.J.Super.* at 604.

As is apparent, both the Commission and the Appellate Division decisions focused on the statutory phrase "representing either party" in reaching their divergent conclusions. The Commission determined that a real estate broker acting as a lender does not "represent" the buyer, and that a real estate broker placing a mortgage loan with an unaffiliated lender represented the lender and not the buyer. The Appellate Division disagreed, concluding that the "totality of the circumstances of [the buyer's] relationship with the broker" justifies a buyer's assumption that any service performed by the real estate broker in connection with the mortgage loan is rendered on behalf of the buyer. *Id.* at 602–03. On this critical issue, however, the record before the Commission is silent, particularly with respect to whether the real estate broker's relationship to the buyer in the mortgage transaction can be clarified by disclosure. Although the Appellate Division concludes that disclosure is immaterial if the broker is paid both for representing the seller in the sales transaction and for representing the buyer in the mortgage transaction, *id.* at 600–01, the significance of the broker's disclosure with respect to the issue of representation was not addressed below and should be developed in the record on remand.

Both the Commission's conclusion that a real estate broker placing a mortgage loan will be paid its fee by the lender, and the Appellate Division's conclusion that any such fee can be passed by the lender to the borrower, are sharply disputed by the Department of Banking. As intervenor before us, the Department asserts that its interpretation of the Mortgage

Bankers and Brokers Act prohibits the payment of fees by mortgage bankers to mortgage brokers for placing mortgages. *N.J.S.A.* 17:11B–13(b). The Department's position is that a mortgage broker may collect its fee from the borrower only in the form of application fees and discount points. The Department indicates that the statutory reference to the payment of fees to licensed or exempt persons for "arranging * * * a mortgage loan for a borrower," *N.J.S.A.* 17:11B–14(e), must be read in conjunction with the limitations on fees that mortgage brokers are authorized to charge. *N.J.S.A.* 17:11B–13(b). In construing these statutory provisions, a court would ordinarily accord appropriate deference to the administrative interpretation of the Department of Banking. *See Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327 (1984); *In re Application of Saddle River,* 71 *N.J.* 14, 24 (1976); *Infocomp Corp. v. Somerset Trust Co.,* 165 *N.J.Super.* 382, 391 (App.Div. 1979). Although we need not decide this issue now, we assume that on remand the Commission and the Department of Banking will attempt to reconcile their apparently divergent views as to the proper source of a licensed mortgage broker's compensation for placing a mortgage loan. In this connection there are related issues involving the propriety of payments by licensed mortgage bankers to real estate brokers not required to be licensed as mortgage brokers, and payments to sales personnel employed by such real estate brokers.

C. Preemption and the Commerce Clause

Although not raised before the Commission or the Appellate Division, it is contended before us that the Appellate Division's decision, to the extent that it prohibits a mortgage lender affiliated with the seller's broker from issuing the mortgage loan to the buyer, is preempted by the Federal Real Estate Settlement and Procedures Act (RESPA), 12 *U.S.C.* 2607(c)(4). RESPA expressly exempts from its provisions prohibiting the payment of "kickbacks" and referral fees for settlement services a transaction in which a real estate broker directly or indirectly refers the mortgage loan transaction to an affiliated

mortgage company, provided the required disclosure is made to the mortgagor.[11]  However, the RESPA preemption provision applies only to "inconsistent" state laws, and the Secretary of the Department of Housing and Urban Development may not determine that a state law is inconsistent with RESPA if the Secretary determines that "such law gives greater protection to the consumer." [12]  In addition, the RESPA provision containing the "controlled business" exemption has its own preemption provision, which provides: "No provision of state law or regulation that imposes more stringent limitations on controlled business arrangements shall be construed as being inconsistent with this section." 12 *U.S.C.* § 2607(d)(6).  Appellants argue that an outright prohibition of mortgage loans by companies affiliated with the seller's real estate broker is not merely a

[11]The 1983 Amendment to Section 8 of RESPA reads as follows:

Nothing in this section shall be construed.as prohibiting ... (4) controlled business arrangements so long as (A) at or prior to the time of the referral a disclosure is made of the existence of such an arrangement to the person being referred and, in connection with the referral, such person is provided a written estimate of the charge or range of charges generally made by the provider to which the person is referred, except that where a lender makes the referral, this requirement may be satisfied as part of and at the time that the estimates of settlement charges required under section 2604(c) of this title are provided, (B) such person is not required to use any particular provider of settlement services, and (C) the only thing of value that is received from the arrangement, other than the payments permitted under this subsection, is a return on the ownership interest or franchise relationship.  12 *U.S.C.* 2607(c)(4).

[12]RESPA's general preemption provision is 12 *U.S.C.* § 2616, which provides:

This chapter does not annul, alter, affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency.  The Secretary is authorized to determine whether such inconsistencies exist.  *The Secretary may not determine that any State law is inconsistent with any provision of this chapter if the Secretary determines that such law gives greater protection to the consumer.*  In making these determinations the Secretary shall consult with the appropriate Federal agencies.  [Emphasis added.]

"more stringent limitation" and is therefore inconsistent with the RESPA exemption. In view of our determination that the entire matter must be remanded for further proceedings, we express no opinion on the preemption issue at this stage of the proceeding. Similarly, we need not now consider appellant's contention that the Appellate Division's interpretation of *N.J. S.A.* 45:15–17(i) constitutes an impermissible burden on interstate commerce and thus violates the Commerce Clause of the United States Constitution.

Finally, it is apparent from the briefs submitted to this Court by the various intervenors that, in addition to the parties before us, a substantial number of other real estate brokerage companies in New Jersey are affiliated through common ownership with licensed mortgage lenders. The validity of these business arrangements could have been affected by the decision of the Appellate Division. The record before the Commission is barren of any facts describing the precise manner in which such companies operate, the nature and extent of the interrelation between the real estate brokerage company and the affiliated mortgage entity, and the impact of such enterprises upon the public served by them. In the absence of such a record, the Commission's interpretation of the Act lacks the factual and evidentiary foundation essential to sustain its conclusions. *See Goodman v. London Metals Exchange, Inc.* 86 *N.J.* 19, 28–29 (1981); *Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 92–93 (1973); *Board of Educ. of Elizabeth v. City Council of Elizabeth,* 55 *N.J.* 501, 507–08 (1970); *see also New Jersey Ass'n of Health Care Facilities v. Klein,* 182 *N.J.Super.* 252, 258 (App.Div.1981) (remand appropriate when interested parties had no opportunity to appear before agency). Moreover, such deficiencies in the record preclude an informed appellate review of the Commission's findings. *See Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 118–120 (1984); *Katz v. Township of Howell,* 67 *N.J.* 51, 63 (1975); *Carbone v. Weehawken Township Planning Bd.,* 175 *N.J.Super.* 584, 586 (Law Div.1980).

## III

Although deference is due the interpretation of a regulatory scheme by the agency charged with its enforcement, statutory interpretation is ultimately the task of the judiciary. *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 560–64 (1976). In this case, the task of statutory interpretation is made more difficult by virtue of the complex and diverse factual settings in which the statute may be applied. The judicial function would be assisted by an initial interpretation, based on an adequate record, by the agency charged with the statute's enforcement. However, the record before the Commission in this case does not adequately reflect the wide variety of business arrangements through which licensed real estate brokers may participate in both a real estate sale and the mortgage transaction essential to its consummation. Accordingly, a remand is essential in order to permit the development of a comprehensive record. *See Cramer v. Betchner,* 47 *N.J.* 345, 347–48 (1966); *Kotlarich v. Mayor and Council of Ramsey,* 51 *N.J.Super.* 520, 543 (App.Div.1958); *Carbone v. Weehawken Township Planning Bd., supra,* 175 *N.J.Super.* at 586; *see also Texter v. Department of Human Servs.,* 88 *N.J.* 376, 383 (1982) (courts have discretion to remand administrative action for further agency proceedings in the interests of justice).

On remand, the primary issue before the Commission will continue to be the application of *N.J.S.A.* 45:15–17(i) to real estate brokers who receive compensation from both the sale and mortgage components of the same transaction. In this respect, the hearing on remand will be an adjudicative proceeding resulting in a declaratory ruling as to the question of statutory interpretation. *N.J.S.A.* 52:14B–8, –9.

We have previously noted the significant regulatory authority conferred by the Legislature upon the Department of Banking with respect to real estate brokers who function as mortgage bankers or mortgage brokers. *N.J.S.A.* 17:11B–2(d). We acknowledge, as did the Appellate Division, that the Commis-

sioner of Banking could address the very issues involved in this proceeding by issuing regulations pursuant to the Mortgage Bankers and Brokers Act. *N.J.S.A.* 17:11B–13(a). Although the regulatory focus of the Commission of Banking is on the mortgage banking and mortgage brokerage function of real estate brokers, that focus could properly embrace concerns related to improper "steering" of mortgage business by real estate brokers involved in both the sale and mortgage components of the same transaction. It would indeed be anomalous for the Real Estate Commission and the Commissioner of Banking to act inconsistently as to these important issues. We also acknowledge, as did the Commission in its Declaratory Ruling of August 24, 1985, that the Commission may deem it appropriate to adopt regulations in order to implement its decision on the issue of statutory interpretation. *See N.J.S.A.* 45:15–6.

Accordingly, in order to recognize the independent regulatory interest of the Commissioner of Banking, we remand this matter to both the Commissioner of Banking and the Real Estate Commission to hold joint hearings, which shall be conducted by an administrative law judge assigned by the Director of the Office of Administrative Law. *N.J.S.A.* 52:14B–10(c); *N.J.S.A.* 52:14F–5(n), (o). *See City of Hackensack v. Winner,* 82 *N.J.* 1, 36–37 (1980). To the extent that the hearings are adjudicative and involve the interpretation of *N.J.S.A.* 45:15–17(i), the Real Estate Commission shall be deemed to have the predominant interest. *N.J.A.C.* 1:1–14.5. To the extent that the hearings involve rulemaking, *N.J.S.A.* 52:14B–4, the administrative law judge shall make recommendations to each agency regarding the adoption of appropriate regulations. *N.J.S.A.* 52:14B–4(g). We have previously recognized the need for administrative agencies to use hybrid proceedings, characterized by both the adjudicative and rulemaking functions, in the discharge of their statutory responsibilities. As we observed in *Texter v. Department of Human Servs., supra,* 88 *N.J.* at 385:

Administrative agencies possess the ability to be flexible and responsive to changing conditions. *See Heir v. Degnan*, 82 *N.J.* 109, 121 (1980). This flexibility includes the ability to select those procedures most appropriate to enable the agency to implement legislative policy. *See N.J.S.A.* 52:14F–7(a) (Supp.1981). Therefore, agencies sometimes develop hybrid proceedings possessing characteristics of both adjudication and rulemaking. *See Cunningham supra*, 69 *N.J.* at 21 (public utility ratemaking procedures, although quasi-legislative in origin, are conducted like quasi-judicial proceedings); *N.J.A.C.* 1:1–1.-6(a)(3). In fact, courts and commentators have encouraged hybrid agency proceedings as a way of producing more reasoned agency decisions, especially in complex and controversial policy areas. *See, e.g., International Harvester Co. v. Ruckelshaus*, 478 *F.* 2d 615, 649 (D.C.Cir.1973); *Id.* at 651–652 (Bazelon, C.J., concurring); Bazelon, "Coping with Technology Through the Legal Process", 62 *Cornell L.Rev.* 817, 824–826 (1977); Stewart, "Vermont Yankee and the Evolution of Administrative Procedure," 91 *Harv.L.Rev.* 1805, 1812–1814 (1978).

The rulemaking aspect of the hearings on remand should afford an opportunity to representatives of the public, including the Public Advocate, to participate in the proceedings. In addition, the hearings would be enhanced by the participation of a wide cross-section of businesses that function, either directly or through affiliates, both as real estate brokers and as licensed mortgage bankers or mortgage brokers.

For the reasons stated, the judgment of the Appellate Division is reversed and the matter is remanded to the Real Estate Commission and the Commissioner of Banking for hearings in accordance with this opinion. We do not retain jurisdiction.

*For reversal* –Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*For affirmance* – None.