952 A.2d 487

# IN RE HIGHLANDS WATER PROTECTION AND PLANNING ACT RULES, N.J.A.C. 7:38–1 ET SEQ.

Superior Court of New Jersey
Appellate Division

Argued May 20, 2008—Decided July 22, 2008.

Before Judges SKILLMAN, YANNOTTI and LeWINN.

*Robert P. Zoller* argued the cause for appellant New Jersey Farm Bureau (*Sterns & Weinroth,* attorneys; *Mr. Zoller, Christopher E. Torkelson* and *Jason T. Stypinski,* on the brief).

*Barbara L. Conklin,* Deputy Attorney General, argued the cause for respondent Department of Environmental Protection (*Anne Milgram,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Ms. Conklin,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

In August 2004, the Governor signed into law the Highlands Water Protection and Planning Act (the Highlands Act), *N.J.S.A.* 13:20–1 to –35.[1] This legislation establishes a state agency, called the Highlands Water Protection and Planning Council (Highlands Council), *N.J.S.A.* 13:20–4, which is delegated responsibility for land use planning for the Highlands Region, including adoption of a master plan.

The Highlands Act creates two areas within the Region: a preservation area, in which further development is strictly regulated, and a planning area, in which development consistent with the Act's goals is encouraged. *See N.J.S.A.* 13:20–7(b), (c); *N.J.S.A.* 13:20–10(b), (c). The Act delegates responsibility to the Department of Environmental Protection (DEP) to establish a permitting review program for all major development in the preservation area. *N.J.S.A.* 13:20–31 to –35. The Act also delegates responsibility to the DEP to adopt "rules and regulations establishing the environmental standards for the preservation area upon which the regional master plan adopted by the [Highlands Council] and the

---

[1] A challenge to the constitutionality of the Highlands Act is currently pending before the Supreme Court. *OFP, L.L.C. v. State,* 395 *N.J.Super.* 571, 930 *A.2d* 442 (App.Div.), *certif. granted,* 193 *N.J.* 277, 937 *A.2d* 979 (2007).

Highlands permitting review program administered by the [DEP] ... shall be based." *N.J.S.A.* 13:20–32. These rules and regulations are required to contain certain provisions specified in the subsections of *N.J.S.A.* 13:20–32, including "a septic system density standard." *N.J.S.A.* 13:20–32(e).

In May 2005, the DEP discharged its rulemaking responsibility under *N.J.S.A.* 13:20–32 by adopting Highlands Act rules, *N.J.A.C.* 7:38, which became known as the "interim" rules. *See* 37 *N.J.R.* 2050(a). These rules included the "septic system density standard" mandated by *N.J.S.A.* 13:20–32(e). Specifically, the rules provided that in the preservation area no more than one "individual subsurface disposal system" is permitted per eighty-eight acres of any lot containing "all forest" or twenty-five acres of any lot that "does not contain forest[.]" *N.J.A.C.* 7:38–3.4(b)(1), (2).

Appellant New Jersey Farm Bureau filed a notice of appeal challenging the validity of the interim rules. Thereafter, in December 2005, the DEP proposed to readopt these interim rules, with certain amendments, to produce a "final" set of Highlands Act rules and regulations. The final rules provided for the same septic density standards as the interim rules. The DEP set forth its justification for those standards in a document entitled, "Basis & Background of the Septic Density Standard of the Highlands Water Protection and Planning Act Rule at *N.J.A.C.* 7:38–3.4."

The DEP received extensive public comments regarding these proposed rules, including comments from the Farm Bureau. The final Highlands rules were adopted in November 2006, to become effective on December 4, 2006. 38 *N.J.R.* 5011(a).

Following the DEP's adoption of the final Highlands Act rules, the Farm Bureau filed an amended notice of appeal. The Farm Bureau's appeal challenges two of the final rules: the water allocation rule, *N.J.A.C.* 7:38–3.2(g), and the septic density rule, *N.J.A.C.* 7:38–3.4(b)(1), (2).

We conclude that the water allocation rule is valid. However, the Farm Bureau has raised substantial questions regarding the validity of the septic density rule that require an evidentiary hearing to determine whether the DEP has reasonably implemented the section of the Highlands Act requiring adoption of a septic system density standard.

## I

One subsection of *N.J.S.A.* 13:20–32 requires the DEP to include rules relating to water diversions and allocations in the rules and regulations establishing environmental standards for the preservation area. This subsection provides in pertinent part:

> Existing unused allocation or allocations used for nonpotable purposes may be revoked by the department where measures to the maximum extent practicable are not implemented to reduce demand.
>
> [*N.J.S.A.* 13:20–32(d); *see also N.J.S.A.* 13:20–30(b)(3)(same).]

To implement *N.J.S.A.* 13:20–32(d), the DEP has adopted a comprehensive rule relating to water diversions and allocations. *N.J.A.C.* 7:38–3.2. The subsections of this rule dealing with unused water allocations provide in pertinent part:

> (g) *In accordance with N.J.S.A. 13:20–32d, and pursuant to (h) below, the Department may reduce an approved water allocation to eliminate any unused portion* as follows:
>
> 1. Monthly and/or annual allocations may be reduced through a Department-initiated minor permit modification, or during the review of a permit renewal or modification application, *if usage is less than 80 percent of the allocation, based on records for the previous five years;* or
>
> 2. If all practicable water conservation measures are not undertaken. . . .
>
> . . . .
>
> (h) *Before reducing an allocation pursuant to (g) above, the Department shall:*
>
> 1. Consider projected water demands associated with approved water main extensions, approved water supply contracts, and facility expansions planned within the next five years;
>
> 2. *Provide the permittee with an opportunity for a public hearing pursuant to N.J.A.C. 7:19–2.8, prior to final permit modification;* and
>
> 3. Depending on the purpose of the diversion, allow the permittee to implement a water-use practice during the term of the renewed or modified permit that will significantly improve water conservation.
>
> [Emphasis added.]

■ The Farm Bureau does not challenge the validity of *N.J.A.C.* 7:38–3.2(g)(2). However, it argues that *N.J.A.C.* 7:38–3.2(g)(1), insofar as it permits the DEP "to revoke [a] water allocation permit[ ] where usage falls beneath an 80% threshold," is not authorized by *N.J.S.A.* 13:20–32(d), which only authorizes the DEP to revoke a water allocation permit "where measures to the maximum extent practicable are not implemented to reduce demand."

We agree with the Farm Bureau that *N.J.S.A.* 13:20–32(d) does not authorize the DEP to revoke a water allocation permit solely because a permittee's usage falls below 80% of its allocation. However, this does not require invalidation of *N.J.A.C.* 7:38–3.2(g)(1). First, we note that this rule is permissive; it provides that the DEP "may" reduce an approved water allocation if the actual usage has been less than 80% of the allocation for the previous five years. Second, before a permit can be modified to impose such a reduction, the permittee must be afforded an opportunity for a hearing. *N.J.A.C.* 7:38–3.2(h)(2). Consequently, *N.J.A.C.* 7:38–3.2(g)(1) can be read simply to trigger a process of review of a permittee's water usage if that usage has fallen below the 80% threshold, and if that review shows that the permittee has reduced demand "to the maximum extent practicable[,]" its allocation cannot be reduced. *N.J.S.A.* 13:20–32(d). Therefore, there is no irreconcilable inconsistency between *N.J.A.C.* 7:38–3.2(g)(1) and *N.J.S.A.* 13:20–32(d).

■ The Farm Bureau also argues that the rules adopted by the DEP under the Highlands Act relating to water diversions and allocations are invalid because they are inconsistent with the rules relating to water diversions and allocations adopted by the DEP under the Water Supply Management Act, *N.J.S.A.* 58:1A–1 to –26. This argument is clearly without merit and only requires brief discussion. *R.* 2:11–3(e)(1)(E). The first clause of *N.J.S.A.* 13:20–32(d), which directs the DEP to include rules relating to water diversions and allocations in the rules and regulations

establishing environmental standards for the preservation area of the Highlands region, begins:

> [N]otwithstanding the provisions of [*N.J.S.A.* 58:1A–5], or any rule or regulation adopted pursuant thereto, to the contrary[.]

Thus, *N.J.S.A.* 13:20–32(d) specifically contemplates that the rules relating to water diversions and allocations that the DEP adopts under the Highlands Act may be "contrary" to the rules relating to these subjects that the DEP had previously adopted under the Water Supply Management Act. In any event, the water diversions and allocations for agricultural and horticultural uses are regulated by rules the DEP adopted under the Water Supply Management Act rather than under the Highlands Act. *See N.J.A.C.* 7:38–2.5(c)(1). Consequently, the rules that the DEP has adopted under the Highlands Act do not affect Farm Bureau members who continue to devote their land to agricultural and horticultural uses.

## II

*N.J.S.A.* 13:20–32(e) requires the DEP to adopt

> a septic system density standard [for the preservation area of the Highlands] established at a level to prevent the degradation of water quality, or to require the restoration of water quality, and to protect ecological uses from individual, secondary, and cumulative impacts, in consideration of deep aquifer recharge available for dilution[.]

The rule adopted by the DEP to satisfy this requirement provides in pertinent part:

> (b) A new individual subsurface disposal system or aggregate of equivalent disposal units where the sanitary wastewater design flow is 2,000 gallons per day or less is permitted within the preservation area. . . .
>
> 1. On a lot that contains all forest, the applicant proposes no more than one individual subsurface disposal system or equivalent disposal unit for each 88 acres of the lot;
>
> 2. On a lot that does not contain forest, the applicant proposes no more than one individual subsurface disposal system or equivalent disposal unit for each 25 acres of the lot[.]
>
> [*N.J.A.C.* 7:38–3.4(b)(1), (2).]

The basis and background statement issued by the DEP contains the following general explanation of how the DEP determined the septic density standards established under this rule:

> To comply with the direction of the Legislature, the Department needed to determine parameter(s) of concern, the existing quality of the groundwater with respect to the parameter(s) in the Highlands, the loading of the parameter(s) contributed by a typical septic system and the appropriate model to relate load to concentration in order to achieve no degradation of the water quality. In accordance with the [Highlands Act], the Department evaluated and selected a dilution model to relate load to concentration. Nitrate was selected as the indicator parameter because, of the constituents present in significant and predictable concentrations in septic system effluent, nitrate required the greatest dilution in order to attain ambient quality. To apply the model, values for the following model inputs were selected: an annual recharge rate representative of the Highlands region (9.8 inches per year); a number of persons per household unit representative of the region's population (4 persons per unit); the load of nitrate contributed per system (10 pounds per person per year); and target concentrations of nitrate. Two ambient nitrate concentration standards were selected, 0.21 mg/L for forest land use and 0.76 mg/L for mixed land use.
>
> Applying these model inputs, the Department calculated two regional standards to be applied across the Highlands Preservation Area based on the land use. For forest land use, 88 acres per septic system are required. For mixed land use, 25 acres per septic system are required.

The Farm Bureau argues that the DEP's methodology for determining septic density standards lacks any scientific foundation and that the standards are therefore arbitrary and capricious because (1) the DEP used the "drought of record" rather than the "annual average" recharge rate in determining that the amount of water available for dilution of nitrates in the Highlands region is 9.8 inches per year; (2) the DEP arbitrarily assumed that the average number of persons per household in the Highlands region is 4 persons rather than the actual average household size of 2.7 persons; and (3) the DEP arbitrarily selected low ambient nitrate levels for both forested and non-forested areas. The Farm Bureau claims that if the DEP had used an "annual average" recharge rate at the low level of 20 inches per year, assumed that there are 3 rather than 4 persons in each Highlands household and used the median ambient nitrate level of 1.1 mg/L based on available data from 514 wells, this methodology would have produced a scientifically defensible septic density standard of 6.22

acres per septic system.[2]  The Farm Bureau also argues that the
DEP's septic density standards for the preservation area of the
Highlands ignore the reality that technological advances are con-
stantly improving groundwater quality, thereby enabling septic
systems in cluster developments to reduce nitrates.

■ Although a challenge to the validity of an administrative
regulation is ordinarily determined based solely on the record
developed before the agency in considering adoption of the regula-
tion, a court has the authority to remand for supplementation of
the record, including the conduct of an evidentiary hearing, if it
concludes that such proceedings are required for a proper deter-
mination of the challenge. *See The Mortgage Bankers Ass'n of
N.J. v. N.J. Real Estate Comm'n,* 102 *N.J.* 176, 191, 506 *A.*2d 733
(1986); *Texter v. Dep't of Human Servs.,* 88 *N.J.* 376, 382–83, 443
*A.*2d 178 (1982); *McKenna v. N.J. Highway Auth.,* 19 *N.J.* 270,
277–78, 283–84, 116 *A.*2d 29 (1955).

■ We conclude that this is an appropriate case for such a
remand.  The Farm Bureau has raised substantial questions
regarding the reasonableness of the methodology that the DEP
used in establishing the septic density standards.  The sole justifi-
cation for the use of this methodology is the "Basis and Back-
ground" statement.  The DEP has not shown that this methodolo-
gy has been used by any other agency with comparable regulatory
authority.  Therefore, the Farm Bureau should be afforded the
opportunity for an evidentiary hearing to contest the validity of
these standards.

---

2 We note that the DEP's standards for subsurface sewage disposal systems in
the Pinelands, which can be found in *N.J.A.C.* 7:50–6.81 to –6.87, are not based
on lot sizes.  Instead, the pertinent Pinelands regulation provides:

The design of the system and its discharge point, and the size of the entire
contiguous parcel on which the system or systems is located [must] ensure
that ground water existing from the entire contiguous parcel or entering a
surface body of water will not exceed two parts per million nitrate/nitrogen
calculated pursuant to the Pinelands dilution model[.]

[*N.J.A.C.* 7:50–6.84(4)(ii).]

The dilution model is set forth in Appendix A to the regulation.

Accordingly, we uphold the validity of the water allocation rule. We remand the case to the DEP to afford the Farm Bureau an opportunity for an evidentiary hearing before the Office of Administrative Law (OAL) regarding the validity of the septic density standards. The proceedings before the OAL, including the issuance of appropriate findings of fact and conclusions of law, shall be completed within one hundred days of the filing of this opinion, and the DEP shall complete the remand within one hundred fifty days of this opinion. Jurisdiction is retained.