**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2605-19

IN RE NEW JERSEY
HIGHLANDS WATER
PROTECTION COUNCIL'S
APPROVAL OF RESOLUTION
2020-03 THE AMENDED
PETITION FOR PLAN
CONFORMANCE.

_____

Submitted March 2, 2021 – Decided May 13, 2021

Before Judges Gilson, Moynihan, and Gummer.

On appeal from the New Jersey Highlands Water Protection Council.

Wisniewski & Associates, LLC, attorneys for appellant DPF Chester, LLC (John S. Wisniewski and Jennifer M. Kurtz, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Department of Environmental Protection (Sookie Bae, Assistant Attorney General, of counsel; Jason Brandon Kane, Deputy Attorney General, on the brief).

Mason Thompson, LLC, attorneys for respondent Borough of Chester (Brian W. Mason, on the brief).

PER CURIAM

On January 16, 2020, the New Jersey Highlands Water Protection and Planning Council (Council) adopted Resolution 2020-03, approving a petition from the Borough of Chester (Chester) to designate Chester as a Highlands Center. "A Highlands Center is an area where development and redevelopment [are] planned and encouraged . . . to support balance . . . by providing for sustainable economic growth while protecting critical natural and cultural resources." Highlands Center Designation, N.J. Highlands Council, www.nj.gov/njhighlands/planconformance/guidelines/centers.html (last visited Apr. 22, 2021).

Appellant DPF Chester, LLC (DPF), which owns land in Chester, appeals from the Council's final agency action adopting Resolution 2020-03 (Resolution 2020-03 or the Resolution). DPF seeks to have us either vacate the Resolution or remand the matter for further proceedings. Discerning no abuse of discretion by the Council, we reject DPF's objections and affirm the Council's adoption of Resolution 2020-03.

I.

In 2004, the Legislature enacted the Highlands Water Protection and Planning Act (the Act), N.J.S.A. 13:20-1 to -35, which designated an area

encompassing approximately 1,250 miles, spanning eighty-eight municipalities in seven counties, as the Highlands Region. N.J.S.A. 13:20-2. The Act recognizes the Highlands Region as an "essential source of drinking water . . . for one-half of the State's population" that "contains other exceptional natural resources such as clean air, contiguous forest lands, wetlands, pristine watersheds, and habitat for fauna and flora," as well as "many sites of historic significance, and . . . abundant recreational opportunities." Ibid.

The Act created the Council and designated it a regional planning and protection entity, charged with protecting and enhancing the significant resources of the Highlands Region. The Council was authorized to develop, adopt, and periodically revise a Regional Master Plan (Master Plan). N.J.S.A. 13:20-4, -6 and -10.

The Act established two distinct areas within the Highlands Region: the "preservation area," which is of "exceptional natural resource value" and subject to stringent natural resource protection standards and regulations, N.J.S.A. 13:20-2; and the "planning area," which is an area subject to a comprehensive planning approach that protects water and other significant resources while accommodating appropriate development and economic growth, N.J.S.A. 13:20-10(b) to (c). Municipalities and counties in the preservation area are required

3

to conform their land use and development to the Master Plan. N.J.S.A. 13:20-14. Municipalities and counties in the planning area can voluntarily adhere to the Master Plan by submitting "plan conformance" petitions. N.J.S.A. 13:20-15.

Chester is entirely in the planning area of the Highlands Region. N.J.S.A. 13:20-7(a)(3) and (c). Accordingly, it had the option to submit a petition to the Council advising of its intent to conform to the Master Plan. N.J.S.A. 13:20-15(a)(1). In November 2008, Chester submitted a petition for plan conformance, which was administratively completed in April 2016 (2016 Petition or Petition). In July 2016, the Council approved Chester's 2016 Petition with conditions.

In October 2018, Chester entered into a settlement agreement with two borough property owners concerning Chester's efforts to comply with its affordable housing obligations. Chester had filed a declaratory-judgment action seeking approval of its Housing Element and Fair Share Plan to comply with In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1 (2015). Larison's Corner, LLC and Turkey Farms Acquisitions, LLC intervened in the declaratory-judgment action. Under the settlement agreement thirty-six affordable housing units, as well as other commercial facilities, are to be built on the Turkey Farms property.

A-2605-19

The settlement agreement also contemplates the development of the Larison's Corner property.

In October 2019, Chester requested an amendment to the 2016 Petition to designate the entire borough as a Highlands Center. Chester sought that designation to "support Center-based planning for development, redevelopment and infrastructure development that is appropriately scaled to address existing infrastructure needs and maintain Chester Borough's small-town quality of life and historic character." Chester also sought Center designation to "expand wastewater treatment capacity and extend wastewater collection lines to eliminate an existing long-standing, undesirable and unsustainable condition of individual on-site septic systems" by constructing "a new centralized sewage treatment facility."

Chester supported its request with a Highlands Center Designation Feasibility Report (Feasibility Report) and implementation plan. The Feasibility Report discussed the proposed designation's consistency with the Master Plan and its objectives of smart growth and sustainable economic development. The Feasibility Report discussed some of the settlement agreement's terms but did not include a copy of the agreement.

In October and November 2019, Council staff communicated with Chester and sought additional information related to its request to amend the 2016 Petition. During those communications, Council staff asked Chester to designate Highlands Environmental Resource Zones (Resource Zones) and demonstrate that Chester had available water infrastructure to support future growth. A Resource Zone "is a land area within a designated center that contains environmentally sensitive resources" and will "be afforded appropriate planning and management as part of the comprehensive center planning." N.J. Highlands Council, Consistency Review and Recommendations Report: Petition for Highlands Center Designation Borough of Chester, Morris County 3 (2020), https://www.nj.gov/njhighlands/morris_county/chester_borough/center_amendment/1406_center_dcrrr.pdf. Chester proposed to designate certain areas as Resource Zones, with two exceptions for areas where development is anticipated for affordable housing units and a wastewater treatment plant.

The Council invited public comment on Chester's request to amend its 2016 Petition for thirty days, from November 15, 2019, to December 16, 2019. No comments were submitted during that period. While the period for public comment was open, Chester requested, and Council staff agreed, to revise the

A-2605-19

implementation plan to include funding for a study regarding the removal of invasive species and regrowth of critical habitat.

On January 16, 2020, the Council considered Chester's amended Petition at an open public meeting. Prior to the meeting, a copy of the Council staff's recommendation report, which appended Chester's Feasibility Report, was made available to the public on the Council's website.

At the beginning of the meeting, Council member Kurt Alstede announced that a company he owned had real estate in Chester. Alstede stated that he had conferred with the Council's ethics liaison officer and had been advised that his company's ownership of property in Chester was not a conflict of interest. Accordingly, Alstede stated that he would participate in considering Chester's amended Petition.

Council staff then presented the amended Petition and their recommendation for approval. During the meeting, DPF's counsel spoke and submitted written comments, arguing that the amended Petition was inconsistent with the Act. DPF's counsel also contended that the Council should consider the anticipated development called for in the settlement agreement. Furthermore, counsel for DPF contended that designating all of Chester as a Highlands Center would violate the Master Plan because it would be inconsistent

with the Plan's goals of surface-water and ground-water protection and preservation of historic sites. Accordingly, DPF requested that the amended Petition be rejected or that the Council adjourn consideration so that additional information could be submitted.

After hearing from staff and the public, the Council voted to pass Resolution 2020-03 and adopt the recommendation report and implementation plan. Eight Council members voted in favor of approving the Resolution and three voted against.

In March 2020, DPF filed this appeal. Around the same time, DPF moved before the Council for a stay of Resolution 2020-03 pending the appeal. In July 2020, the Council denied the request for a stay.

II.

On appeal, DPF makes four arguments, contending that the Resolution approving Chester's amended Petition should be vacated because (1) it was adopted after the Council learned Chester had omitted material information concerning the settlement agreement; (2) it was arbitrary and capricious; (3) it violates the legislative policies the Council was created to implement; and (4) there was insufficient time for public comment and a "possible" conflict of interest in Council member Alstede voting on the amended Petition.

A.

An appellate court's review of an administrative agency's final decision is limited. Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. 483, 515 (2018). An agency's decision will not be reversed unless "(1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007) (citing In re Taylor, 158 N.J. 644, 656 (1999)). Moreover, courts generally "afford substantial deference to an agency's interpretation of a statute that it is charged with enforcing." Ibid. (citing R & R Mktg., L.L.C., v. Brown-Forman Corp., 158 N.J. 170, 175 (1999)). An appellate court, however, is not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting In re Taylor, 158 N.J. at 658).

"'[A] strong presumption of reasonableness' attends an agency's exercise of its statutorily delegated duties, which 'is even stronger when the agency has delegated discretion to determine the technical and special procedures to accomplish its task.'" Caporusso v. N.J. Dep't of Health & Senior Servs., 434

N.J. Super. 88, 103 (App. Div. 2014) (alteration in original) (quoting <u>In re Holy Name Hosp.</u>, 301 N.J. Super. 282, 295 (App. Div. 1997)). "As long as the agency decision is contemplated under its enabling legislation, the action must be accorded a presumption of validity and regularity." <u>A.M.S. ex rel. A.D.S. v. Bd. of Educ.</u>, 409 N.J. Super. 149, 159 (App. Div. 2009) (citation omitted).

B.

DPF argues that Chester omitted material information concerning the 2018 settlement agreement. DPF asserts the settlement agreement contemplates future development exceeding that disclosed by Chester in its submission and that the development will frustrate the Act. We reject this argument for several reasons.

First, in approving the amended Petition, the Council did not approve developments contemplated in the settlement agreement. Instead, the Council examined whether Chester should be designated as a Highlands Center and whether that designation was consistent with the Master Plan.

Second, the record establishes that the Council and its staff were aware of Chester's settlement agreement. Although DPF asserts that the Council should have been given a full copy of the settlement agreement, DPF did not make that objection during the thirty-day comment period, nor did it move before us to

10

supplement the Council's record under Rule 2:5-5(b).  See, e.g., In re Highlands Act, 401 N.J. Super. 587, 595 (App. Div. 2008).


C.

Next, DPF argues that the amended Petition did not meet the applicable designation requirements for a Highlands Center.  In that regard, DPF contends that Chester's application "serves the sole purpose of facilitating development in an area currently designated a Highlands Center Protection Zone," violating the requirement that a Highlands Center be an "area[] of existing development," which is "appropriate for additional growth and economic development."  N.J. Highlands Council, RMP Addendum 2019-2 Plan Conformance Procedures 16 (2019), https://www.nj.gov/njhighlands/master/amendments/pc/pcprocedures.pdf.

In the Highlands Region, protection zones consist of high resource value lands integral to maintaining water infrastructure and sensitive ecological resources.  N.J. Highlands Council, Land Use Capability Zone Map 2 (2008), https://www.nj.gov/njhighlands/master/tr_land_use_capability_zone_map.pdf. Development is "extremely limited" in protection zones and "subject to stringent limitations" meant to preserve environmentally sensitive lands.  Ibid.  In

conditionally permitting Chester to be a Highlands Center, the Council found that the implementation and designation of Resource Zones would allow smart growth while protecting critical natural resources. Significantly, the Council also found that most of Chester was developed and thus not part of a protection zone. The Council's actions reflect a balancing of smart growth with comprehensive planning. Accordingly, its approval was consistent with the applicable standards and was not arbitrary, capricious, or unreasonable. See N.J. Highlands Coal. v. N.J. Dep't of Env't Prot., 456 N.J. Super. 590, 603 (App. Div. 2017), aff'd as modified, 236 N.J. 208 (2018) (citation omitted) (recognizing appellate courts should not second-guess judgments falling squarely within an agency's expertise).

D.

DPF also argues that Chester's amended Petition violates the Act's legislative policies. Under the Act, the Council has a duty to "protect, restore, and enhance the quality and quantity of surface and ground waters." N.J.S.A. 13:20-10(b)(1). Accordingly, the Council's Master Plan limits septic system density and requires adequate and appropriate infrastructure for wastewater. N.J. Highlands Council, Highlands Regional Master Plan 39, 89, 173 (2008), https://www.nj.gov/njhighlands/njhighlands/master/rmp/final/highlands_rmp_

112008.pdf; see also N.J.S.A. 13:20-32. DPF argues that this policy will be violated because Chester's wastewater system is overburdened, and the settlement agreement contemplates the construction of a septic system. Chester's plans, however, call for an upgrade of its wastewater treatment plant that is expected to remedy its wastewater issues and improve water quality. Consequently, the new septic system in the settlement agreement is proposed to be a temporary system and will be replaced when the wastewater system is upgraded. Moreover, as already noted, the Council did not approve specific developments. Instead, it conditionally allowed Chester to be designated as a Highlands Center. That designation was not inconsistent with or in violation of the policies embodied in the Act.

E.

Finally, DPF argues that there are two procedural flaws in the Council's approval of Resolution 2020-03. First, DPF argues that the Council provided an insufficient public comment period. Specifically, DPF asserts that the Council should have afforded more than thirty days of public comment because Chester's implementation plan was amended to include additional funding for a study of the borough's lands during the comment period.

The Council is required to afford a thirty-day comment period before considering a petition for Highlands Center designation. RMP Addendum 2019-2 Plan Conformance Procedures, at 18. The Council held a public comment period from November 15, 2019, to December 16, 2019, on Chester's application to amend its 2016 Petition. The revision did not change the fundamental aspects of the request to designate Chester a Highland Center, and it did not require additional time for public comment.

Second, DPF alleges that Council member Alstede "may" have had a "potential conflict" because his company owned property in Chester. The Council and its staff are subject to the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-12 to -28. N.J.S.A. 13:20-5(h). Under State Ethics Commission regulations, State officials are required to recuse themselves from matters in which they have a financial or personal interest, "direct or indirect, that is incompatible with the discharge of the State official's public duties." N.J.A.C. 19:61-7.4(d).

Council member Alstede disclosed that the Council's ethics liaison officer had found no conflict arising from his company's ownership of real estate in Chester. DPF points to no law establishing a conflict for a business owner to consider a municipality's Highlands Center designation. See N.J.A.C. 19:61-

14                                                                    A-2605-19

7.4(e) and (f) (explaining when an "incompatible financial or personal interest" may exist). Alstede's business owning property in Chester did not create a fiduciary relationship between him and the borough. Furthermore, the designation of a Highlands Center does not confer a direct financial benefit to any property or individual within the Center. Consequently, DPF's conflict of interest argument has no factual support.

In summary, the record establishes that the Council considered Chester's request to designate a Highlands Center in a manner consistent with the Act and the Master Plan. We discern nothing arbitrary, capricious, or unreasonable in the Council's actions in passing Resolution 2020-03.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-2605-19