283 N.J. Super. 233 (1995)
661 A.2d 832
MORTGAGE BANKERS ASSOCIATION OF NEW JERSEY, A NOT-FOR-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, PETITIONER-APPELLANT/CROSS-RESPONDENT,
v.
NEW JERSEY REAL ESTATE COMMISSION AND NEW JERSEY DEPARTMENT OF BANKING, RESPONDENTS-RESPONDENTS/CROSS-RESPONDENTS, AND WEICHERT CO. REALTORS AND MORTGAGE ACCESS CORP., COLDWELL BANKER SCHLOTT AND SEARS MORTGAGE CORP., FOX & LAZO, INC., AND SHELTER MORTGAGE SERVICES, INC., INTERVENORS/CROSS-APPELLANTS, AND NEW JERSEY ASSOCIATION OF REALTORS, AMICUS CURIAE/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1995.
Decided July 25, 1995.
*236 Before Judges BRODY, LONG and P.G. LEVY.
Clark E. Alpert argued the cause for appellant/cross-respondent Mortgage Bankers Association of New Jersey (Alpert & Raice, attorneys; Mr. Alpert of counsel and on the briefs; David N. Butler, on the briefs).
Sarah T. Darrow, Deputy Attorney General, argued the cause for respondent/cross-respondent New Jersey Real Estate Commission (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Darrow, on the brief).
Wayne A. Watkinson, Deputy Attorney General, argued the cause for respondent Department of Banking (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Watkinson, on the brief).
William J. Wolf argued the cause for respondents/cross appellants Weichert Co. Realtors and Mortgage Access Corp. (formerly Weichert Mortgage Company) (Bathgate, Wegener, Dugan & Wolf, attorneys; Mr. Wolf, on the briefs).
Marguerite M. Schaffer argued the cause for respondents/cross-appellants Coldwell Banker Schlott and Sears Mortgage Corporation (Shain, Schaffer & Rafanello, attorneys; Ms. Schaffer, of counsel and on the brief; Todd R. Staretz, on the brief).
*237 Robert G. Holston argued the cause for intervenors/cross-appellants Fox & Lazo, Inc. and Shelter Mortgage Services, Inc. (Holston, MacDonald and Morgan, attorneys; Mr. Holston, of counsel and on the briefs; Paul D. Aaronson, on the briefs).
Barry S. Goodman argued the cause for amicus curiae/cross-appellant The New Jersey Association of Realtors (Greenbaum, Rowe, Smith, Ravin & Davis, attorneys; Mr. Goodman, of counsel and on the briefs; Christine F. Marks, on the briefs).
The opinion of the court was delivered by BRODY, P.J.A.D.
This matter is before us again following a remand by the Supreme Court. Mortgage Bankers Ass'n v. New Jersey Real Estate Comm'n, 102 N.J. 176, 506 A.2d 733 (1986). In our earlier opinion, reported at 200 N.J. Super. 584, 491 A.2d 1317 (App.Div. 1985), the panel split in its interpretation of N.J.S.A. 45:15-17(i) (statute), which prohibits a real estate broker, broker-salesperson or salesperson from:
Collecting a commission as a real estate broker in a transaction, when at the same time representing either party in a transaction in a different capacity for a consideration;
The matter had come before us to review a declaratory ruling of the New Jersey Real Estate Commission (Commission), made, pursuant to N.J.S.A. 52:14B-8, at the request of First Boston Capital Group, Inc. (First Boston), a mortgage investor.
The Commission had ruled that the statute did not bar a real estate broker from collecting a commission from a seller of property even if the buyer or lender paid the broker a fee for providing the mortgage the buyer needed to complete the purchase. The real estate broker was able to perform this service through access to an interactive computer program that quickly informed the broker whether First Boston would fund the mortgage loan and outlined the loan's essential terms. The ruling was challenged by the Mortgage Bankers Association of New Jersey (MBA), whose members originate and issue real estate mortgages.
*238 The majority of the panel held that the statute barred receipt of a real estate broker's commission from the seller, viewing the mortgage loan as part of the sale transaction and viewing the broker's services to the buyer as representing the buyer "at the same time" in the overall transaction. The dissenting judge viewed the real estate broker's sale of a mortgage to the buyer as a different transaction from the sale of the real estate, and concluded that the broker would not be representing the buyer by selling him or her the mortgage.
The Supreme Court recognized that the statute's meaning was not self-evident. After considering the arguments of intervenors and amici, it found itself unable to interpret the statute without a record describing how the real estate market operates when residential property is sold. More particularly, the Court wanted to consider evidence of the various functions of and relationships among the real estate broker, the mortgage lender and intermediate bankers, brokers and salespeople. Aware that the way the statute is interpreted would have a major effect on the way real estate is bought and sold, the Court remanded the matter to the Commission and to the Commissioner of the Department of Banking, who had not been called upon previously to exercise his regulatory authority over the marketing and sale of real estate mortgages. The Court directed that the agencies conduct joint hearings, that the Commission reconsider its interpretation of the statute in light of the evidence adduced at those hearings, and that both agencies consider adopting appropriate regulations on the subject. Mortgage Bankers, supra, 102 N.J. at 192, 506 A.2d 733.
The Commission and the Commissioner carried out the Court's mandate by first referring the matter to the Office of Administrative Law. An Administrative Law Judge (ALJ) was directed to conduct evidentiary hearings and make findings describing the avenues available to a buyer interested in obtaining a residential mortgage loan. The ALJ was also directed to suggest to the Commission a proper interpretation of the statute in light of those findings. Finally, the ALJ was charged with the task of recommending *239 to both the Commission and to the Commissioner the substance of new regulations that each agency might adopt to enforce the statute in a way that would complement the Commission's interpretation.
The ALJ, Judge Arnold Samuels, discharged his assignment with care and patience. After extensive hearings he issued an initial decision and report that is comprehensive, detailed, clear, and sensitive to the viewpoints of all parties. The Commission adopted the ALJ's initial decision[1] and both agencies drew heavily on his report when they enacted new regulations. First Boston had withdrawn from the litigation before the hearings began. Its particular relationship with real estate brokers, i.e., providing them with funds to issue a mortgage loan to a buyer, was not duplicated by the remaining parties. These parties presented the usual ways in which real estate brokers merely aid buyers in obtaining mortgages from others, a service they have performed since before enactment of the statute in 1953, and before the development of modern computer technology.
What has changed over the years is that real estate brokers now have a much greater incentive to aid the buyer, and computer technology has made it easier for them to do so. Real estate brokers became more eager to help the buyer obtain a mortgage in 1967 after the Supreme Court held that they are not entitled to a commission if the buyer is financially unable to complete the purchase. Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 548, 236 A.2d 843 (1967). Computer technology now enables real estate brokers to present a buyer immediately with one or more choices for mortgage financing. The broker naturally expects to be compensated for the additional cost of using the computer service. It is this additional compensation that MBA contends runs afoul of N.J.S.A. 45:15-17(i).
*240 By adopting Judge Samuels' decision, the Commission has ruled that real estate brokers may charge the buyer the cost of using the computer service as an aid in obtaining mortgage financing without violating the statute. The Commission arrived at this result by interpreting "transaction" to mean only the real estate sale, and by concluding that aiding the buyer in obtaining a mortgage loan to finance the sale is not "representing" the buyer. Thus a real estate broker is not barred by the statute from receiving a commission from the seller even if the broker also receives "consideration" for aiding the buyer in the mortgage transaction. We affirm this ruling substantially for the reasons expressed by Judge Samuels in his initial decision.
To assure the interpretive integrity of this ruling, the agencies adopted regulations that address MBA's major concern that by receiving compensation for their mortgage services, real estate brokers will favor certain mortgage lenders, particularly by using affiliated mortgage bankers and brokers and, having gained the confidence of buyers, will deprive buyers of the opportunity to obtain more favorable mortgages from others.
N.J.A.C. 11:5-1.40 requires that written notice be given to and acknowledged by the seller and buyer that the real estate broker owes an exclusive fiduciary duty to the seller and is not representing the buyer even though the broker may provide the buyer with "mortgage services." N.J.A.C. 11:5-1.41(a) requires the broker using the mortgage services of an affiliate to give a written disclosure to the buyer of the affiliation. The disclosure also must assure the buyer that "you may obtain your mortgage loan from another source." N.J.A.C. 3:38-5.2(a)(4) places a cap of $250 on the real estate broker's "reimbursement of expenses incurred in providing mortgage related services." A real estate broker who exceeds the cap is "deemed to be engaged in the business of a mortgage banker or broker and must be licensed or employed and registered as a solicitor for a licensed mortgage banker or broker." Ibid.
*241 MBA argues in its appeal that the regulations do not go far enough in warning the buyer that in the event of a conflict of interests the real estate broker's allegiance is solely to the seller, not the buyer, and in advising the buyer of the risks of obtaining a mortgage through an affiliate of the real estate broker. MBA also contends that the $250 cap is too high and that there also should be a cap on a real estate broker's fee for mortgage services even if the broker is also a licensed mortgage banker or broker.
We reject these arguments and sustain the regulations, deferring to the agencies' expertise in channeling the crosscurrents of the real estate and mortgage loan markets. In re Amendment of N.J.A.C. 8:31B-3.31, 119 N.J. 531, 543, 575 A.2d 481 (1990). The regulations are consistent with and are an integral part of the Commission's interpretation of the statute that we now have affirmed. We add that the Commission also adopted N.J.A.C. 11:5-1.39, which prohibits a real estate broker from receiving a kickback for simply steering a buyer to a particular mortgage source.
The real estate brokers and amicus contend in their cross-appeals that some of the regulations exceed the agencies' statutory authority. They argue that certain regulations that cap the real estate brokers' charges to a prospective mortgagor and that require dual licensing if those charges are exceeded, violate N.J.S.A. 45:15-3 and N.J.S.A. 17:11B-2(d).
A real estate broker is defined under the Real Estate License Act (RELA), N.J.S.A. 45:15-1 to -42, as a person who, among other things, "negotiates, or offers or attempts or agrees to negotiate a loan secured or to be secured by mortgage or other encumbrance upon or transfer of any real estate for others." N.J.S.A. 45:15-3. The Mortgage Bankers and Brokers Act (MBBA), N.J.S.A. 17:11B-1 to -20, postdates RELA and accommodates minimal mortgage activity by people licensed under RELA who are not licensed under MBBA. N.J.S.A. 17:11B-2d exempts from MBBA's licensure requirements:

*242 A person licensed as a real estate broker or salesman pursuant to [RELA], and not engaged in the business of a mortgage banker or broker.
The regulations under attack reasonably define "the business of a mortgage banker or broker" in terms of the amount charged for mortgage services. A real estate broker who charges more than $250 for helping a buyer obtain a mortgage is deemed to be engaged in the business of a mortgage banker or broker. In the absence of contrary legislative guidance, we must defer to the agency's judgment. In re Amendment of N.J.A.C. 8:31B-3.31, supra, 119 N.J. at 543, 575 A.2d 481.
Cross-appellants also contend that some of the regulations adopted by the Commission and the Commissioner prohibit those licensed under RELA from providing services they are permitted to provide under the Federal Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C.A. § 2601 to § 2617. RESPA preempts state laws only if they are inconsistent with its provisions and then only if the state laws do not give greater protection to the consumer. Congress has made it clear that these two determinations are to be made by the Secretary of Housing and Urban Development:
This [Act] does not annul, alter, or affect, or exempt any person subject to the provisions of this [Act] from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this [Act], and then only to the extent of the inconsistency. The Secretary is authorized to determine whether such inconsistencies exist. The Secretary may not determine that any State law is inconsistent with any provision of this [Act] if the Secretary determines that such law gives greater protection to the consumer. In making these determinations the Secretary shall consult with the appropriate Federal agencies. [12 U.S.C.A. § 2616.]
Whether the regulations are inconsistent with RESPA, and whether, if inconsistent, they afford consumers greater protection, are issues that implicate the federal government's strong interest in commerce among the states. They also require the exercise of sensitive policy judgments. We therefore conclude that cross-appellants must exhaust their administrative remedy with the Secretary before presenting these issues to a court. Riggs v. Township of Long Beach, 101 N.J. 515, 525, 503 A.2d 284 (1986).
*243 We agree with the affiliated real estate brokers cross-appellants that one of the new regulations arbitrarily requires their offices to be MBBA licensee branches in circumstances where unaffiliated brokers are not similarly treated. By having its office designated a branch of an MBBA licensee, an affiliated real estate broker must place a licensed mortgage banker or broker in charge of the office, pay a license fee of $250 and, with some exceptions, post a surety bond. N.J.A.C. 3:38-1.9(d) and -1.6.
N.J.A.C. 3:38-1.9(m) provides in part:
A licensed real estate office of a person licensed as a real estate broker or salesman pursuant to [RELA] does not constitute a branch of an unaffiliated licensee under the Act merely because the real estate broker or salesman distributes or receives an application of the licensee at the office, or because an unaffiliated licensee under the Act or a solicitor of that licensee who does not hold himself out to the public as performing mortgage banking or brokering there and does not maintain an office or desk there meets at the office of the real estate broker as a convenience to the borrower and distributes or receives applications or fees there.
The regulation renders the office of an affiliated real estate broker the branch office of an MBBA licensee when that office is used in ways that would not render the office of an unaffiliated real estate broker the branch office of an MBBA licensee.
The Commissioner attempted to justify this disparate treatment in his responses to comments that were submitted when the regulation was formally proposed. He stated that affiliated real estate brokers presented a greater risk than unaffiliated real estate brokers of improperly steering mortgage applicants to particular mortgage bankers and brokers. However, as appears from the following excerpt from his Department's brief, the Commissioner acknowledges that other regulations are specifically designed to deal with this problem:
For example, N.J.A.C. 11:5-1.41 requires that the affiliation be disclosed in writing. In addition, N.J.A.C. 11:5-1.39(b) prohibits real estate brokers from offering incentives to salespersons licensed under them for merely referring clients or customers to a particular lender, mortgage broker or other provider or related services. Finally, N.J.A.C. 11:5-1.42 prohibits real estate licensees with affiliated *244 mortgage services from excluding outside mortgage solicitors from their real estate offices.
An affiliated real estate broker who violates the foregoing regulations is not more likely to be law abiding after hiring an MBBA licensee for the office, paying a $250 license fee, and posting a bond. As we previously noted, N.J.A.C. 11:5-1.39(b) prohibits kickbacks for improper steering whether the real estate broker is affiliated or unaffiliated. There is no reason for burdening only an affiliated broker with having to support a branch office of an MBBA licensee.
We are satisfied from a careful review of this record that the remaining issues raised by the parties are clearly without merit and a written opinion concerning them would have no precedential value. R. 2:11-3(e)(1)(E).
The Real Estate Commission's declaratory ruling interpreting N.J.S.A. 45:15-17(i) is affirmed and, except for a modification of N.J.A.C. 3:38-1.9(m), the regulations promulgated in conjunction with that ruling are sustained. The exception for unaffiliated real estate brokers provided for in N.J.A.C. 3:38-1.9(m) shall be extended as well to affiliated real estate brokers.
NOTES
[1] The Commission supplemented Judge Samuels' initial decision by specifically ruling that the practices of the real estate brokers who are parties in this case do not violate the statute.