**TOTAL TV, a Wisconsin Corporation, dba Total TV, Plaintiff–Appellee,**

v.

**PALMER COMMUNICATIONS, INC. and Colony Communications, Inc., Defendants–Appellants.**

**No. 94–55112.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1995.

Decided Oct. 24, 1995.

Edward P. Henneberry, Esq., Howrey & Simon, Washington DC, Dale J. Giali, Howrey & Simon, Los Angeles, California, for defendant-appellant Palmer Communications Incorporated.

Kathleen A. Marron, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minnesota; and Ernest I. Reveal, Tod R. Dubow, Robins, Kaplan, Miller & Ciresi, Costa Mesa, California, for defendant-appellant Colony Communications, Inc.

Robert M. Whitney, Katherine M. Lunsford, Foley & Lardner, Madison, Wisconsin, and Christopher Q. Britton, Michael R. Weinstein, Ferris & Britton, San Diego, California, for plaintiff-appellee.

Barbara M. Motz, Deputy Attorney General, Los Angeles, California, as amicus curiae in support of plaintiff-appellee.

Spencer R. Kaitz, Jeffrey Sinsheimer, California Cable Television Association, Oakland, California, as amicus curiae in support of defendants-appellants.

Before: PREGERSON, POOLE, and D.W. NELSON, Circuit Judges.

POOLE, Circuit Judge:

Appellants, cable television operators Colony Communications, Inc. ("Colony") and Palmer Communications, Inc. ("Palmer"), interlocutorily appeal the district court's denial of their motion to dismiss on federal preemption grounds competitor Total TV's diversity action. We granted permission to appeal pursuant to 28 U.S.C. § 1292(b), and we affirm.[1]

## I. Background

Colony is a franchised cable operator that provides cable television services in California and other parts of the United States. Before it was purchased by Colony, Palmer was also a franchised cable operator in California. They are subject to federal regulation as franchised cable operators, under both the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521 et seq. (1988) (amended 1992), and the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §§ 521 et seq. (Supp. IV 1992) (collectively "the Cable Acts"). Total TV operates as a "cable television dealer" and competes with Colony and Palmer for certain private customers[2] in the Coachella Valley of Riverside County, California, but is not subject to federal regulation of its subscriber rates because it is a non-franchised dealer.

This action was originally filed in California state court by Total TV, which maintains that appellants are attempting to drive it out of the Coachella Valley by engaging in below-cost predatory pricing with the intent to destroy competition in violation of the California Unfair Practices Act ("UPA"), Cal. Bus. & Prof.Code § 17043.[3] Total TV seeks monetary damages and an injunction prohibiting appellants from continuing their predatory pricing. Colony and Palmer claim that such relief would prohibit them from charging their current rates, effectively regulating them in contravention of the Cable Acts.

The action was removed by the appellants to the Central District of California on the basis of diversity of citizenship. Colony and Palmer then filed a motion to dismiss Total TV's complaint pursuant to Fed.R.Civ.P. 12(b)(6), based on the express preemption provisions of the Cable Acts. On May 28, 1993, the district court issued a tentative motion granting the motion to dismiss. However, after ordering additional briefing,

1. The motion of the California Cable Television Association to file an amicus curiae brief on behalf of appellants is granted. The brief submitted on May 2, 1994 is deemed filed.

2. These so called "private customers" live in private or gated communities represented by homeowner associations. The associations enter into contracts with cable television operators to provide service throughout the communities.

The associations are billed directly for cable service and typically pass the costs onto the individual residents as part of the monthly dues.

3. California Business and Professions Code § 17043 provides in relevant part: "It is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof. ... for the purpose of injuring competitors or destroying competition."

the district court issued an order on September 20, 1993, denying the appellants' motion to dismiss on preemption grounds. On December 20, 1993, the district court certified that order for interlocutory appeal, and on January 21, 1994, we granted appellants' petition to review the order.

## II. Rate Regulation

We review de novo a dismissal for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). *Everest and Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id.* We also review de novo the district court's decision regarding preemption. *See Aloha Airlines, Inc. v. Ahue,* 12 F.3d 1498, 1500 (9th Cir.1993) (reviewing the district court's determination that ERISA preempted a state law claim); *Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 668 (9th Cir.1993) (reviewing the district court's determination that FCIA preempted all state law claims).

The issue of whether the Cable Acts preempt state laws is one of first impression in this Circuit. The 1992 Act provides in relevant part: "no federal agency or state may regulate the rates for the provision of cable services." 47 U.S.C. § 543(a)(1) (Supp. IV 1992).[4] We hold that the Cable Acts do not preempt the provisions of the UPA that Total TV invokes because these provisions do not regulate appellants' rates. The UPA is "not a price fixing statute at all. It merely fixes a level below which the producer or distributor may not sell with intent to injure a competitor." *People v. Gordon,* 105 Cal. App.2d 711, 234 P.2d 287, 292 (1951) (quoting *Wholesale Tobacco Dealers Bureau Inc. v.*

*National Candy & Tobacco Co.,* 11 Cal.2d 634, 82 P.2d 3, 15 (1938)).

Even assuming that Total TV receives the relief it requests, Colony's and Palmer's prices will not be regulated directly and, as long as they do not act with discriminatory purpose, they will be free to "sell [their] merchandise at any price [they] please in the ordinary course of business." *Food & Grocery Bureau of So. Cal. v. United States,* 139 F.2d 973, 974 (9th Cir.1943). Therefore, the UPA provisions in question do not operate to regulate rates within the meaning of the Cable Acts' preemption clause. Nowhere in the legislative history of either Act is there a suggestion that "rate regulation" includes predatory pricing or price discrimination measures.

Our conclusion is bolstered by the D.C. Circuit's recent decision affirming the F.C.C.'s interpretation that the prohibition of negative option billing is "a consumer protection provision rather than rate regulation." *Time Warner Entertainment Co. v. FCC,* 56 F.3d 151, 194 (D.C.Cir.1995). The D.C. Circuit concluded that the statutory prohibition of negative option billing did not preempt, but rather coexisted with, state consumer protection laws. *Id.* at 192–93. Like the UPA, the negative option laws are directed at the seller's conduct rather than the seller's actual rates. Because they do not directly affect rates, they are not rate regulations.

Appellants' reliance on *Storer Cable Communications v. City of Montgomery, Ala.* is misplaced. 806 F.Supp. 1518, 1542–44 (M.D.Ala.1992) (holding that an ordinance regulating rates charged to subscribers was preempted by the 1984 Cable Act). The statute at issue in *Storer* not only set particular cable television rates, but was directed specifically at the cable industry in clear violation of the Cable Acts.[5] *Id.*

---

**4.** Section 543(a) of the 1984 Cable Act provides that "[a]ny Federal agency or State may not regulate the rates for the provision of cable service except to the extent provided under this section." 47 U.S.C. § 543(a) (1988). In the 1992 Act, the wording of the clause was changed slightly and recodified as § 543(a)(1). That section reads in part: "[n]o Federal agency or State may regulate the rates for the provision of cable service except to the extent provided under this

section and section 532 of this title." 47 U.S.C. § 543(a)(1) (Supp. IV 1992).

**5.** Other cases relied upon by appellants are also distinguishable, as noted by the district court, because they do not concern statutes of general applicability. *See, e.g., Westmarc Communications, Inc. v. Conn. Dep't. of Pub. Util. Control,* 807 F.Supp. 876 (D.Conn.1990) (involving an order affecting rates directly aimed at a cable company); *Housatonic Cable Vision v. Dep't of*

### III. Preemption

■ The Supremacy Clause invalidates state laws that "interfere with, or are contrary to" federal law. *See* U.S. Const., Art. VI, cl. 2; *Hillsborough County, Fla. v. Automated Medical Labs.,* 471 U.S. 707, 712–13, 105 S.Ct. 2371, 2374–75, 85 L.Ed.2d 714 (1985) (quoting *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824)). There are three types of federal preemption of state statutes: (1) express preemption; (2) implied preemption; and (3) preemption that arises because the federal and state statutes conflict, making compliance with both impossible. *Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375. We consider only the theory of express preemption in this appeal.[6]

■ In determining the preemptive scope of the Cable Acts, we must discern and effectuate Congressional intent. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) ("'[t]he purpose of Congress is the ultimate touchstone' of preemption analysis") (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1189–90, 55 L.Ed.2d 443 (1978)). The Cable Acts were passed to foster competition in the cable industry. *See Time Warner,* 56 F.3d at 184 ("The government's interest in regulating cable rates is evident—protecting consumers from monopoly prices charged by cable operators who do not face effective competition.").

The UPA complements, not undermines, the Cable Acts. Like the Cable Acts, the UPA was designed to "encourage competition, by prohibiting unfair ... and discriminatory practices by which fair and honest competition is destroyed or prevented." Cal. Bus. & Prof.Code § 17001. Thus, the Cable Acts do not preempt the UPA because the federal laws and the state law share the same purpose. *See Inglis v. ITT Continental Baking Co.,* 668 F.2d 1014, 1050 n. 62 (9th

Cir.1981), *cert. denied,* 459 U.S. 825, 825, 103 S.Ct. 57, 58, 74 L.Ed.2d 61 (1982).

Although under certain circumstances federal regulations have been held to explicitly preempt generally applicable state statutes, *see, e.g., Alliance Shippers, Inc. v. Southern Pac. Transp. Co.,* 858 F.2d 567, 569–70 (9th Cir.1988) (claims brought under California state antitrust statutes preempted by Staggers Railway Act), Congress clearly did not intend the Cable Acts to preempt generally applicable state antitrust laws such as the UPA. By stipulating in § 543(a) of the 1984 Cable Act that a federal agency may not "regulate the rates" for cable services, Congress revealed its intent to limit preemption of state law under the Cable Acts. *See* 47 U.S.C. § 543(a) (1988) (amended 1992). The Supreme Court has differentiated between the phrases "regulate" and "related to regulation." *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 377, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992) and *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). The former is associated with a more limited preemptive intent. The latter phrase, which is not used in § 543(a), signifies a broad preemptive purpose sufficient to preempt state laws of general application such as the UPA. Other courts have held similarly regarding the preemptive scope of § 543. *See Cable Television Ass'n v. Finneran,* 954 F.2d 91, 101 (2d Cir.1992) ("the language of the preemption clause at issue [e.g. § 543(a)] fails to evince an intention to carve out a wide area free of state regulation").

■ Most importantly, the legislative history of the Cable Acts cements our belief that they were not meant to preempt laws of general applicability. In its amendment to the 1992 Act, Congress quite explicitly stated that it did not intend the Cable Acts to dilute enforcement of statutes like the UPA. Congress noted that "[n]othing in [the Cable

*Publ. Util. Control,* 622 F.Supp. 798 (D.Conn. 1985), and *Comcast Cablevision, Inc. v. City of Sterling Heights,* 178 Mich.App. 117, 443 N.W.2d 440 (1989) (involving fees unrelated to rates for the provision of cable services).

**6.** The theory of implied preemption, not argued by the appellants, is nevertheless unavailable here because "[i]mplied antitrust immunity is not

favored, and can be justified only by a convincing showing of clear repugnancy between the antitrust laws and the regulatory system." *United States v. Nat'l Ass'n of Sec. Dealers, Inc.,* 422 U.S. 694, 719–20, 95 S.Ct. 2427, 2443, 45 L.Ed.2d 486 (1975). Appellants have failed to make that showing.

Television Consumer Protection Act of 1991] shall be construed to alter or restrict in any manner the applicability of any Federal or State antitrust law." 47 U.S.C. § 521 note, 106 Stat. 1503 ("§ 27").[7] Senator Metzenbaum's comment that the amendment makes "clear that cable companies will still be fully subject to the antitrust laws," also supports our conclusion that the intent of 47 U.S.C. § 543(a)(1) was not to preempt statutes such as the UPA. 138 Cong.Rec. S654–01, S661 (daily ed. Jan. 30, 1992).[8] When the intent of Congress is as clear and well-defined as it is here, we "must give effect to [that] unambiguously expressed intent. . . ." *Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

■■■ Giving effect to § 27 will not effectively nullify § 543(a)(1). There is a wide range of competitive rates that a cable company could establish that are neither excessive nor below cost. As the district court noted, § 27 and § 543(a)(1) can be reconciled by giving effect to both sections through a reasonable interpretation based on the history and purpose of the Cable Acts. We adopt the district court's suggestion that "[i]n light of the clear mandate of Section 27 that state antitrust laws not be preempted, § 543(a)(1) applies only to those situations involving a statute (or local ordinance) directly aimed at the cable industry and affecting or regulating rates."

Appellants' argument that § 27 has no application outside the scope of the 1992 Act because § 543(a)'s express preemption of state rate regulation predated the 1992 Cable Act is without merit. Section 27 was not added to the 1992 Act to change the preemptive scope of § 543. Exempting rate regulation under the 1984 Act from antitrust laws but then removing that immunity in the 1992 Act would leave an intervening window of eight years. That eight year period not only runs directly counter to the legislative history, but is also plainly impractical.

Lastly, § 556(c) of both Cable Acts, which provides that "any provision of law of any State ... which is inconsistent with this chapter shall be deemed to be preempted and superseded," is not relevant in this instance because the UPA is consistent with the Cable Acts. Section 556(c) is simply a recognition that Congress did not intend to fully occupy the field of cable television regulation. Because the purposes of the Cable Acts and the state antitrust laws are consis-

---

**7.** Appellants note that § 27 appears only as a note in the codification of the laws. However, it is undeniably part of the Statutes at Large, since it was approved by the Committee and the full Senate, and is part of the "Congressional Findings and Policy for Pub.L. 102–385." The district court properly decided that § 27 "cannot be relegated to the status of legislative history simply because it is not codified in the United States Code." *See, e.g., Chicago Professional Sports Ltd. Partnership v. National Basketball Ass'n,* 808 F.Supp. 646 (N.D.Ill.1992) (citing section 27 as support for the proposition that state antitrust acts are not preempted).

**8.** The context of the remarks in the Congressional Record is as follows:

MR. METZENBAUM: The third matter that has been of concern to me has to do with the question of whether or not this act would in any way provide an exemption from the antitrust laws. The amendment [§ 27] makes it clear that cable companies will still be fully subject to the antitrust laws.

The amendment is actually needed because S. 12 [the 1992 Cable Act] contains provisions which are designed to prevent anticompetitive conduct by cable companies and some cable companies might very well argue that Congress intended to have the procompetitive regulatory provisions of S. 12 serve as a substitute for the antitrust laws. This amendment will prevent needless litigation over this issue by clarifying that the antitrust laws still apply in full to the cable industry.

. . . [I]t is my understanding that this amendment is in accord with the intention of the managers of the bill, and if that is the case, I am prepared to move forward with this amendment.

MR. INOUYE: Madam President, the amendment before us is the result of over 10 hours of discussions and consultations involving the distinguished Senator from Ohio, several members of the committee, and countless numbers of staff people.

We have studied the amendment very carefully, and we find that it is acceptable.

MR. DANFORTH: Madam President, after discussing this matter with Senator Metzenbaum earlier in the day, we have discussed it with the staff of the Judiciary Committee ... [T]he amendment is not objectionable ...

THE PRESIDING OFFICER: The amendment (No. 1518) was agreed to.

138 Cong.Rec. S654–01, S661 (daily ed. Jan. 30, 1992).

tent, and a hypothetical conflict is not a sufficient basis for preemption, the UPA is not preempted by § 556(c).  *See Inglis,* 668 F.2d at 1049.

**AFFIRMED.**