[No. B129300. Second Dist., Div. Five. Oct. 7, 1999.]

WASHINGTON MUTUAL BANK, FA, et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PAUL E. BROWN et al., Real Parties in Interest.

774

**COUNSEL**

Stroock & Stroock & Lavan, Julia B. Strickland, Lisa M. Simonetti and Jennifer A. Ellis for Petitioners.

No appearance for Respondent.

Clifford A. Cantor; Rossbacher & Associates, Henry Rossbacher, James Cahill and Clara I. Duran Reed for Real Parties in Interest.

**OPINION**

**WEISMAN, J.*—**

## I. INTRODUCTION

Petitioners Washington Mutual Bank, FA, Washington Mutual Bank, FA, as successor in interest to Great Western Bank, F.S.B., and Washington Mutual Bank, FA, formerly known as American Savings Bank, FA (petitioners) petitioned this court for a writ of mandate to vacate and set aside the ruling of respondent Los Angeles Superior Court overruling a demurrer petitioners had filed to the second amended class action complaint filed by plaintiffs and real parties in interest Paul E. Brown et al. (plaintiffs) as individuals and on behalf of all others similarly situated, insofar as the demurrer asserted that the doctrine of express federal preemption prevented

*Judge of the Municipal Court for the Los Angeles Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

plaintiffs from pursuing private state law claims based on alleged violations of a federal disclosure law where the federal law did not provide a private right of action. The federal law at issue is the Real Estate Settlement Procedures Act of 1974 (RESPA), as amended, 12 United States Code[1] section 2601 et seq., and Regulation X to the Real Estate Settlement Procedures Act (24 C.F.R. § 3500.1 et seq. (1999), as amended) (Regulation X) which regulates the settlement process for certain residential real estate loan transactions throughout the nation that involve federally related mortgage loans. RESPA and Regulation X require certain disclosures be made to borrowers by lenders both at the time of application for a loan and at the time of closing of the loan, including disclosure of charges that the borrower will have to pay for settlement services such as credit reports, appraisal fees, recording fees, wire transfer fees, and other loan related services. RESPA and Regulation X also require the use of a standard disclosure form at the time of settlement, or closing, that is known as an "HUD-1 form." (§ 2603; Reg. X, 24 C.F.R. §§ 3500.8, 3500.9.)

Plaintiffs' second amended complaint alleged that petitioners added charges onto the actual costs of various loan-related services, including services provided by third parties such as credit reporting companies and appraisers, in order to enhance petitioners' profits, and then failed to disclose that the total amount the borrower had to pay at the time of closing for such services was not just the actual cost of the services but also included the "inflated" charges. Plaintiffs claimed that the failure to disclose such inflated charges by petitioners constituted: (1) unfair and deceptive business practices under Business and Professions Code section 17200; (2) unjust enrichment; (3) breach of fiduciary duty; (4) conversion; and (5) negligence.

Petitioners filed a demurrer to the second amended complaint and argued, in part, that plaintiffs' state law claims should be dismissed with prejudice because RESPA and Regulation X expressly preempted state laws that are "inconsistent" with RESPA or Regulation X.[2] Petitioners argued that neither RESPA nor Regulation X provides for a private right of action for a

---

[1]All further statutory references will be to title 12 of the United States Code unless otherwise indicated.

[2]Petitioners also claimed in the demurrer that they were only required to disclose the total charge that the borrower was to pay, and did not have to separately list on the HUD-1 form both the actual cost and the additional amount that they added to the actual cost. They further argued that they were not prohibited from adding a charge onto the actual cost of the services. They also claimed that pursuant to section 2617(b), they were statutorily exempt from any liability because they acted in good faith reliance on the standard HUD-1 form required by RESPA and Regulation X. They additionally asserted that no fiduciary duty existed. They also claimed that if there was disagreement about whether the cost that had to be disclosed to the borrower was the actual cost to the lender for the services or the total charge that the

violation of disclosure requirements relating to charges for settlement services and therefore any state law that allows for a private right of action based on such a theory is "inconsistent" with the federal law and is preempted.

Respondent court found that there was no inconsistency between RESPA and state law and ruled that a private right of action under state law was not preempted by RESPA or Regulation X. Respondent court overruled the demurrer to the extent it relied on the doctrine of express preemption as a bar to a private right of action under state law. ██ ██ Following the overruling of the demurrer on this ground, petitioners filed a petition for a writ of mandate in this court seeking an order vacating and setting aside the ruling of respondent court on the issue of preemption.[3] We issued an order to show cause[4] but did not stay any proceedings before the Secretary relating to the request for an informal opinion on other issues in the case. The sole issue before us on this writ proceeding is whether, assuming that the facts as alleged by plaintiffs establish a violation of the disclosure requirements of RESPA and Regulation X, the express preemption language set forth in RESPA (§ 2616) and Regulation X (24 C.F.R. § 3500.13 (1999)) bars the claims under state law made by plaintiffs in this case.[5]

borrower was to pay, the proper interpretation of that issue should be left to the Secretary of the Department of Housing and Urban Development (Secretary) under provisions of RESPA. (§ 2617(a) & (c)(1).) Respondent court deferred ruling on any of these issues so that it could request an informal opinion from the Secretary on what charges had to be disclosed on the HUD-1 form and whether a lender could add any charges to the cost it paid for settlement services. The only aspect of the demurrer that the court ruled on was the preemption argument, which it overruled.

[3]A purely legal issue of preemption based on undisputed facts is properly raised by demurrer and an order overruling a demurrer on that ground is properly reviewed by petition for a writ of mandate. (American Internat. Group, Inc. v. Superior Court (1991) 234 Cal.App.3d 749, 755 [285 Cal.Rptr. 765].)

[4]Since the significant issue of possible federal preemption of state law claims for violations of the disclosure requirements of RESPA has not previously been addressed in California, we considered it appropriate to take the unusual step of granting writ review of what is essentially a pretrial pleading matter. (See American Internat. Group, Inc. v. Superior Court, supra, 234 Cal.App.3d at p. 755.)

[5]As previously noted, respondent court deferred ruling on (1) whether RESPA and Regulation X allowed the additional charges to be imposed, and (2) whether the actual cost and additional charges had to be separately disclosed or if only the total charge to the borrower had to be disclosed. Respondent court deferred ruling on those issues while an informal opinion was sought from the Secretary on those questions. (See ante, fn. 2.) In the demurrer filed by petitioners, on the issue of federal preemption, petitioners argued that even if respondent court assumed that the facts alleged by plaintiffs were true and that there were allegedly improper disclosures on HUD-1 forms, any state claims by plaintiffs would nevertheless be barred by the doctrine of express federal preemption. We are not being asked to decide if the additional charges were proper under federal law or had to be disclosed separately under federal law. We are only deciding whether the doctrine of express federal

## II. Factual Allegations of the Complaint[6]

The second amended complaint filed in this case basically alleged that petitioners inflated charges that plaintiffs had to pay for certain required settlement services involving federally related mortgage loans by (1) adding charges onto the actual cost that petitioners paid to third party providers of services such as real estate appraisers and credit reporting companies, (2) adding charges onto the actual cost of recording the mortgage documents, and (3) charging loan customers like plaintiffs charges in excess of the usual charges paid by other bank customers for services such as wire transfer fees. The complaint alleged that petitioners failed to disclose on the required federal HUD-1 form that such "inflated" fees were being charged, which deprived customers like plaintiffs of any knowledge that they were paying a charge in excess of the actual cost of the services and deprived them of the ability to negotiate with the lender for a lower charge or to seek lower charges at other lending institutions.

The complaint alleged that plaintiff Paul Brown paid an inflated charge of $50 for a credit report when the actual cost was only $15. It alleged that plaintiff Ronald Courtois paid a charge of $50 for a credit report when the actual cost was only $15. It also alleged that Mr. Courtois paid a charge of $54 for recording a deed of trust when the actual cost of recording the document was only $24. The complaint alleged that plaintiffs James and Bonnie Myers paid $50 for a credit report when the actual cost to petitioners was only $28. It alleged that plaintiff Mark Chadwell paid $50 for a credit report when the actual cost was only $6.55. It alleged that plaintiff Charles Guedel paid $50 for a credit report when the actual cost was only $14.60. Similar allegations were made as to a number of other named plaintiffs. In addition, the complaint alleged that $79 fees for tax services and $22 fees for flood certification were routinely charged to plaintiffs and other loan customers, when in fact the actual cost paid by petitioners was less and the difference was kept by petitioners and not disclosed to plaintiffs. It was further alleged that the wire transfer fee charged to plaintiffs was substantially higher than the fee that was charged to other customers for wire transfers and that the amount of the inflated fee was not disclosed. The complaint also alleged that a number of plaintiffs paid $300 for real estate appraisal fees when the actual cost of the appraisal was less than $300.

---

preemption acts as a complete bar to private action based on state law when a violation of disclosure requirements is alleged.

[6]In reviewing a ruling overruling a demurrer, the appellate court must assume the truth of all facts properly pleaded. (*American Internat. Group, Inc.* v. *Superior Court, supra,* 234 Cal.App.3d at pp. 752-755.)

## III. Discussion

### A. *Federal Law Regulating Settlement Procedures for Real Estate Transactions Involving Federally Related Mortgage Loans*

#### 1. *The Real Estate Settlement Procedures Act*

In 1974, Congress enacted RESPA "to insure that consumers throughout the [n]ation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." (§ 2601.) It enacted RESPA to deal with settlement procedures in real estate transactions involving federally related mortgage loans, which for purposes of the instant case can be defined as loans secured by a first or subordinate lien on residential property designed for occupancy by one to four families and that are made in whole or in part by any lender whose deposits or accounts are federally insured or by a lender that is federally regulated. (§ 2602.) Settlement services are defined by RESPA as "any service provided in connection with a real estate settlement" and includes services such as title searches, appraisals, credit reports, and loan processing. (§ 2602(3).) The purpose of RESPA, in part, as stated by Congress, was (1) to result in more effective advance disclosure to home buyers and sellers of settlement costs, and (2) to eliminate kickbacks or referral fees that unnecessarily increased settlement services.[7] (§ 2601(b).)

RESPA required that lenders throughout the nation use a uniform settlement statement form as prescribed by the Secretary. (§ 2603.) This uniform settlement statement is known as the HUD-1 form. (24 C.F.R. § 3500.8 (1999).) The HUD-1 form must "conspicuously and clearly itemize all charges imposed upon the borrower . . . in connection with the settlement . . . ." (§ 2603(a).) At the time of application for a loan, an information booklet must be distributed to the applicant by the lender explaining the settlement process, including, among other things, an explanation of the nature and purpose of each cost associated with real estate settlement. (§ 2604(b).) The lender must include with the booklet a good faith estimate of the charges for particular settlement services. (§ 2604(c).)

RESPA does not establish a private right of action under its provisions in federal court by a borrower for allegedly inaccurate disclosures on the

---

[7]The complaint in this case does not allege that any of the "inflated" fees constituted illegal kickbacks or referral fees as defined by RESPA. (§ 2607.)

HUD-1 form relating to charges for settlement services.[8] Administrative enforcement of the disclosure provisions of RESPA relating to settlement costs is the responsibility of the Secretary and other federal, state and local agencies that have supervisory powers over lenders and other persons covered by RESPA. (24 C.F.R. § 3500.19(a) (1999).)

RESPA includes an express provision relating to preemption of state laws, which provides that nothing in RESPA annuls, alters, affects or exempts any person subject to its provisions from complying with the laws of any state with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of RESPA. (§ 2616.) It is further provided that the Secretary is authorized to determine whether an inconsistency exists, with the direction that the Secretary may not determine a state law is inconsistent if the state law gives greater protection to the consumer. (*Ibid.*)

### 2. *Regulation X*

Regulation X was promulgated by the Secretary pursuant to RESPA and further regulates settlement procedures for real estate transactions involving federally related loans. (24 C.F.R. § 3500 et seq. (1999).) Among other things, Regulation X defines certain terms, explains in detail the requirements for the good faith estimate,[9] provides for permissible changes to the HUD-1 form,[10] further describes the prohibition on kickbacks and referral fees, contains specific instructions for completing the HUD-1 form,[11] and provides for administrative enforcement of its requirements. Regulation X does not provide a private right of action for improper disclosure of charges

---

[8]RESPA does provide for a private right of action for violation of its provisions relating to kickbacks and referral fees (§ 2607(d)), and for violation of its provisions relating to disclosures of possible assignment or transfer of the loan (§ 2605(f)), but does not provide for a private right of action for improper disclosure of charges on the HUD-1 form.

[9]As an example, Regulation X provides that, "As to each charge with respect to which the lender requires a particular settlement service provider to be used, the lender shall make its estimate based upon the lender's knowledge of the amounts charged by such provider." (24 C.F.R. § 3500.7(c)(2) (1999).) We need not decide if this provision limits the charge to the actual cost of the services charged by the provider or allows an additional fee "based" on the amount charged by the provider to be added by the lender. We also need not decide if an additional fee, if allowed, must have a "reasonable relationship" to the actual amount charged by the provider.

[10]As an example, Regulation X provides that, "Charges not listed on the HUD-1, but that are customary locally or pursuant to the lender's practice, may be inserted in blank spaces." (24 C.F.R. § 3500.9(a)(4) (1999).) We need not decide if this is how the additional fee allegedly charged by petitioners in the instant case should have been disclosed.

[11]As an example, appendix A of Regulation X provides that line 804 of the HUD-1 form is used for the "cost" of the credit report. (24 C.F.R. pt. 3500, appen. A (1999).) We need not decide if this use of the term "cost" refers to the actual cost of the report to the lender or refers to the total amount charged the borrower by the lender for the report at the time of closing.

on the HUD-1 form. It provides for administrative enforcement of its provisions by the Secretary and other federal, state and local agencies. (24 C.F.R. § 3500.19(a).)

Additionally, Regulation X contains an express provision relating to preemption of state laws. Specifically, section 3500.13(a) of Regulation X states that: "State laws that are inconsistent with RESPA or this part are preempted to the extent of the inconsistency. However, RESPA and these regulations do not annul, alter, affect, or exempt any person subject to their provisions from complying with the laws of any State with respect to settlement practices, except to the extent of the inconsistency." (24 C.F.R. § 3500.13(a) (1999).) The same section of Regulation X provides that the Secretary is authorized to determine upon request whether an inconsistency with state law exists, with the proviso that "[t]he Secretary may not determine that a State law . . . is inconsistent . . . , if the Secretary determines that such law . . . gives greater protection to the consumer." (24 C.F.R. § 3500.13(b)(1).)

B. *The Effect of the Express Preemption Provisions Contained in RESPA and in Regulation X on the Private Right of Action Under State Law Asserted by Plaintiffs in the Instant Case*

As previously noted, both RESPA and Regulation X contain express provisions relating to limited preemption of state laws. In essence, both RESPA and Regulation X provide that state laws are preempted only if they are "inconsistent" with RESPA or Regulation X, with the specific declaration by Congress that no state law shall be determined to be "inconsistent" if it provides greater protection to the consumer. (§ 2616; 24 C.F.R. § 3500.13(a) & (b)(1) (1999).) Petitioners and plaintiffs both recognize that resolution of the issue presented in this case depends on an analysis of preemption under the doctrine of "express" preemption as opposed to the doctrine of "implied" preemption.[12]

 Express preemption occurs where Congress has considered the issue of preemption, has included in the legislation under consideration a provision expressly addressing that issue, and has explicitly provided therein that state law is preempted. (*Cipollone* v. *Liggett Group, Inc.* (1992) 505 U.S. 504, 523 [112 S.Ct. 2608, 2621, 120 L.Ed.2d 407].) Congress can define

---

[12]As noted in *Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724, 738 [105 S.Ct. 2380, 2388, 85 L.Ed.2d 728], federal preemption may be either express or implied. Implied preemption occurs where federal legislation does not expressly preempt state law, but a review of the legislation indicates that (1) Congress intended federal law to occupy a field exclusively, or (2) state law is in actual conflict with federal law. (*Freightliner Corp.* v. *Myrick* (1995) 514 U.S. 280, 287 [115 S.Ct. 1483, 1487, 131 L.Ed.2d 385].)

explicitly the extent to which the legislation preempts state law. (*Smiley* v. *Citibank* (1995) 11 Cal.4th 138, 147 [44 Cal.Rptr.2d 441, 900 P.2d 690], affd. on other grounds (1996) 517 U.S. 735, 747 [116 S.Ct. 1730, 1736, 135 L.Ed.2d 25].) In interpreting the extent of the express preemption, courts must be mindful that there is a strong presumption against preemption or displacement of state laws. (*Cipollone* v. *Liggett Group, Inc.*, *supra*, 505 U.S. at p. 523 [112 S.Ct. at p. 2621].) Moreover, this presumption against preemption applies not only to state substantive requirements, but also to state causes of action. (*Medtronic, Inc.* v. *Lohr* (1996) 518 U.S. 470, 485 [116 S.Ct. 2240, 2250, 135 L.Ed.2d 700].) As noted in *California* v. *ARC America Corp.* (1989) 490 U.S. 93, 105 [109 S.Ct. 1661, 1667, 104 L.Ed.2d 86], there is no "federal policy against States imposing liability in addition to that imposed by federal law." Ordinarily, "state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law . . . ." (*Ibid.*)

When Congress has expressly defined the extent to which state law is preempted, a court will interpret the effect of the preemption language by focusing on the plain wording of the provision (*CSX Transp., Inc.* v. *Easterwood* (1993) 507 U.S. 658, 664 [113 S.Ct. 1732, 1737-1738, 123 L.Ed.2d 387]), but will narrowly construe the precise language of the preemption clause in light of the strong presumption against preemption. (*Cipollone* v. *Liggett Group, Inc.*, *supra*, 505 U.S. at p. 523 [112 S.Ct. at p. 2621].) As noted in *Medtronic, Inc.* v. *Lohr*, *supra*, 518 U.S. at page 485 [116 S.Ct. at page 2250], the interpretation of express preemption language "does not occur in a contextual vacuum." The United States Supreme Court in *Medtronic* noted that ". . . because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." (*Ibid.*)

In *Medtronic*, the court had to decide if private causes of action for negligent manufacturing and failure to warn, and for strict liability, that were brought under Florida law for failure of a pacemaker, were expressly preempted by language in the Medical Device Amendments Act of 1976, 21 United States Code section 360k(a). The language provided that no state could establish or continue in effect any requirement which is different from or in addition to any requirement under the federal law. The defendant Medtronic, Inc., argued that the federal law did not provide for a private right of action and that a private right of action relating to negligent manufacture and warnings under Florida law constituted an additional requirement not imposed by the federal law which was expressly preempted. The court found "implausible" the argument that Congress meant to effectively preclude state courts from affording state consumers any protection

from injuries resulting from a defective device. The court noted that since Congress had not provided a private cause of action in the federal law, to find preemption of state law causes of action would "have the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation . . . ." (*Medtronic, Inc.* v. *Lohr, supra*, 518 U.S. at p. 487 [116 S.Ct. at p. 2251].) The court stated that, "It is, to say the least, 'difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct,' . . . ." (*Ibid.*) The court held that the federal law did not preempt private state law causes of action despite Congress's decision not to provide any private rights of action in the federal law.

■ We agree and similarly conclude that the mere absence of a private right of action in a federal law does not mean that a private right of action under state law is inherently in conflict with the federal law and is pre-empted. We will not presume that Congress cavalierly preempted all private state causes of action simply by enacting a limited provision preempting state laws that are inconsistent with the RESPA or Regulation X. Indeed, courts are reluctant to find that state provisions are inconsistent with federal law unless the state law directly conflicts with the federal law, undermines the federal law, or makes it impossible to comply with both federal and state law.

In *California Federal S. & L. Assn.* v. *Guerra* (1987) 479 U.S. 272, 290-292 [107 S.Ct. 683, 694-695, 93 L.Ed.2d 613], the United States Supreme Court had to decide if express preemption of California law occurred under title VII of the Civil Rights Act of 1964, 42 United States Code section 2000e et seq., as amended by the Pregnancy Discrimination Act of 1978, 42 United States Code section 2000e(k), where the federal law expressly invalidated any provision of state law that was "inconsistent" with any of the purposes or provisions of the federal law. The state law at issue was one that required employers to provide leave and reinstatement to employees disabled from working due to pregnancy. State law did not provide for the same right of reinstatement for disabled males. Moreover, the federal Pregnancy Discrimination Act of 1978 specified that discrimination on the basis of pregnancy constituted sex discrimination, which was prohibited by the Civil Rights Act of 1964. California Federal Savings & Loan argued that the state law requiring employers to reinstate females who had been pregnant opened them up to reverse discrimination claims by disabled male workers who did not have a right of reinstatement following their recovery from a disability, and that a state law giving preference on the basis of pregnancy was inconsistent with federal law. The Supreme Court found

that the purpose of the Pregnancy Discrimination Act of 1978 was to prohibit discrimination against pregnant employees and not to prohibit preferential treatment that promoted equal employment opportunity. (479 U.S. at pp. 290-292 [107 S.Ct. at pp. 694-695].) The court also noted that even if it agreed with the contention that federal law prohibited preferential treatment of pregnant employees, there was no "inconsistency" between federal and state law because the state law did not prevent employers from complying with both federal and state law. The court noted that California employers could extend reinstatement rights to disabled men as well as to pregnant women and comply with both state and federal law, and therefore concluded that the case was not one where compliance with both federal and state law is a physical impossibility. (*Id.* at p. 291 [107 S.Ct. at pp. 694-695].)

This narrow interpretation of the term "inconsistent" for purposes of express preemption is also reflected in the position taken by the Secretary in an informal opinion[13] on the meaning of the term "inconsistent" as used in RESPA. In Informal Opinion No. 75 of the Department of Housing and Urban Development, issued on January 29, 1981, the Secretary takes the position that, "There is no inconsistency between RESPA and state law . . . unless compliance with one statute would result in violation of the other." Informal Opinion No. 75 states that, "[A] party, having a duty under RESPA, must be in violation of the state statute if the party complies with RESPA and vice versa before a finding of inconsistency can be made." The informal opinion goes on to state that, "Where compliance with both can be achieved . . . a finding of inconsistency cannot be made."

In this vein, several recent cases decided in the Ninth Circuit are instructive. In each case the Court of Appeals had to interpret express preemption provisions in federal statutes that declared that any state law that was inconsistent with the federal statute was superseded. In *Beffa* v. *Bank of West* (9th Cir. 1998) 152 F.3d 1174, 1177, the court ruled that such an express preemption provision contained in the Expedited Funds Availability Act, 12 United States Code section 4007(b), was "quite narrow" and that, "Congress expressed no desire to preempt state laws or causes of action that supplement, rather than contradict, [the Act]." The court thus upheld the viability of state causes of action for negligence and for misrepresentation based on allegations that the bank had credited a wire transfer to the wrong account.

---

[13]We are mindful that such opinions are not controlling and are not reached in adversary proceedings, but recognize that "while not controlling upon courts [such opinions], do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." (*Skidmore* v. *Swift & Co.* (1944) 323 U.S. 134, 140 [65 S.Ct. 161, 164, 89 L.Ed. 124]; see also *Yamaha Corp. of America* v. *State Bd. of Equalization* (1998) 19 Cal.4th 1, 14 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

(*Beffa* v. *Bank of West, supra*, 152 F.3d. at p. 1177.) In *Allarcom Pay Television* v. *General Instrument Corp.* (9th Cir. 1995) 69 F.3d 381, 386, the court ruled that the Federal Communications Act of 1934, 47 United States Code section 556(c), did not prevent states from enacting laws that impose obligations that are the same as or in addition to those imposed by the federal law, so long as the obligations are not contrary to rights or obligations contained in the federal law. In *Total TV* v. *Palmer Communications, Inc.* (9th Cir. 1995) 69 F.3d 298, 302-303, certiorari denied (1996) 517 U.S. 1152 [116 S.Ct. 1459, 134 L.Ed.2d 576], the court ruled that the express preemption provision of the Cable Communications Policy Act, 47 United States Code section 556(c), did not preempt California's Unfair Practices Act (Bus. & Prof. Code, § 17200 et seq.) since the purposes of the state and federal law were consistent and the state law complemented rather than undermined the federal law.

In the instant case, the narrow analysis utilized by the courts to determine if a state law is inconsistent with a federal law for purposes of express preemption is even more limited by reference to the specific language used in both RESPA and Regulation X that limits the ability of the Secretary to find an inconsistency in the first place. As previously noted, the express preemption provisions of RESPA and Regulation X declare that no provision of a state law is to be deemed "inconsistent" by the Secretary for purposes of preemption if the state law gives greater protection to the consumer. (§ 2616; 24 C.F.R. § 3500.13(b)(1) (1999).)[14] It thus appears clear that Congress intended that consumers should receive maximum protection not only in the form of federal legislation but also in the form of state laws. Congress did not intend any preemption of state laws to occur if those laws resulted in more protections for the consumer as long as the state law did not interfere with the operation of the federal law and it was possible to comply with both the state and federal laws. (See *Briggs* v. *Countrywide Funding Corp.* (M.D.Ala. 1996) 949 F.Supp. 812, 814 [state law must actually interfere with the operation of RESPA for it to be preempted and the mere fact that it may differ from RESPA does not result in preemption].)

---

[14]We assume that a state law or regulation must be complied with until the Secretary determines that it is inconsistent, and that any alleged inconsistency cannot be raised in court as a defense or as a bar to a suit until the party claiming the inconsistency obtains a finding of inconsistency from the Secretary. (See *Mtg. Bankers* v. *N.J. Real Estate* (1995) 283 N.J.Super. 233 [661 A.2d 832, 836]; see also HUD Informal Opinion No. 34 (May 9, 1978) [no finding that state law gives greater protection to a consumer is required as a prerequisite to state law enforcement]; cf. *Greenwald* v. *First Fed. Sav. & Loan Ass'n of Boston* (D.Mass. 1978) 446 F.Supp. 620, 624 [Secretary must determine that a state law gives greater protection before state law can be utilized].) We note that *Greenwald* has been uniformly criticized by commentators (see, e.g., Barron & Berenson, Federal Regulation of Real Estate and Mortgage Lending (4th ed. 1998) § 2.03, p. 2-33, fn. 410) and is inconsistent with the more recent holding in *Mtg. Bankers*.

Indeed, Congress expressly recognized that state laws could impose liability for various acts or omissions under RESPA, since section 2617(b) provides that, "No provision of this chapter *or the laws of any State imposing any liability* shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Secretary or the Attorney General . . . ." (Italics added.) Obviously, Congress did not intend to preempt all state laws, including causes of action, that provided for liability for any acts or omissions under RESPA that were not done in such good faith reliance.

In the instant case, plaintiffs assert private rights of action under various theories of state law. They allege that the failure to disclose the "inflated" charges by petitioners constituted (1) unfair and deceptive business practices under Business and Professions Code section 17200; (2) unjust enrichment; (3) breach of fiduciary duty; (4) conversion; and (5) negligence. Under Business and Professions Code section 17200 any unlawful business act constitutes unfair competition and a private cause of action can be based on the unlawful act even if the predicate law does not provide for a private cause of action. (*Summit Tech.* v. *High-Line Med. Instruments Co.* (C.D.Cal. 1996) 933 F.Supp. 918, 942-943.) A violation of RESPA or Regulation X is made unlawful under California law by Financial Code section 50505, which states that, "Any person who violates any provision of [RESPA] or any regulation promulgated thereunder, violates this division [California Residential Mortgage Lending Act (Fin. Code, § 50000 et seq.)]."[15] Petitioners argue that each of these private causes of action under state law must be

---

[15]California is not the only state that requires disclosures in connection with residential mortgage loans that are the same as or similar to those required under RESPA. For example, Pennsylvania requires the same disclosures as RESPA and Regulation X (41 Pa. Cons. Stat. Ann. § 401), and provides a private right of action for damages or other relief to redress any violations (41 Pa. Cons. Stat. Ann. § 504). Similarly, Massachusetts requires lenders to provide borrowers with good faith estimates and disclosures of all charges and fees and provides a private right of action for a violation. (Mass. Gen. Laws ch. 184, § 17D, subds. (b), (c) and (f), and ch. 93A, § 9.) Colorado requires lenders to provide borrowers with good faith estimates as defined in RESPA, and provides a private right of action for damages if there is a violation. (Colo. Rev. Stat. §§ 38-40-102, 38-40-104.) Washington requires mortgage brokers to comply with the good faith estimate disclosure requirements of RESPA and Regulation X, and deems a violation to be an unfair or deceptive act or practice enforceable through a private right of action. (Wash. Rev. Code §§ 19.146.030, 19.146.100, 19.86.020, 19.86.090.) Arizona requires mortgage brokers to comply with the disclosure requirements of RESPA and a private right of action exists to redress violations. (Ariz. Rev. Stat. Ann. §§ 6-906, 6-946; see *Madsen* v. *Western Am. Mortg. Co.* (1985) 143 Ariz. 614 [694 P.2d 1228, 1235].) Neither the Secretary nor any court has ever found any of these laws to be preempted by RESPA or Regulation X.

deemed preempted because: (1) RESPA provides no private right of action[16]; (2) to allow private actions under state law could lead to different results in different states and would prevent the uniformity sought by RESPA; and (3) allowing suits under the laws of each state would interfere with the operation of the federal law.

Our review of the law demonstrates, and we now hold, that RESPA and Regulation X do not expressly preempt private rights of action under state laws for violations of their provisions. We find that private state causes of action are not inconsistent with the federal disclosure requirements, but rather are complementary to the federal requirements and in fact will promote full compliance with the disclosure law enacted by Congress. We do not believe that allowing borrowers to sue for unlawful disclosures or omissions will interfere in any way with the operation of the federal law, and we find no conflict between RESPA and private state law causes of action. We thus uphold the decision of the trial court to overrule the demurrer to the extent it alleged that plaintiffs' state law claims were preempted by RESPA and Regulation X.

---

[16]Petitioners rely on *Sierra-Bay Fed. Land Bank Assn.* v. *Superior Court* (1991) 227 Cal.App.3d 318, 337-338 [277 Cal.Rptr. 753], for the proposition that a private cause of action under state law cannot be maintained based upon alleged violations of a federal law where the federal law does not provide for private causes of action. The federal law at issue in *Sierra-Bay* was the Farm Credit Act of 1971, as amended, 12 United States Code section 2001 et seq., which in part established procedures for foreclosure sales following defaults on loans obtained under the federal Farm Credit System. The Farm Credit Act did not provide for a private federal cause of action for redress, and the court in *Sierra-Bay* decided that the plaintiff could not file a private state action based on a violation of the federal law. The court in *Sierra-Bay* may have caused some confusion over the extent of its ruling because it did not discuss the issue specifically in terms of preemption, but it is clear that the only issue presented in that case was implied preemption. The court found the area of farm credit as set up by the Farm Credit Act to be "uniquely and absolutely federal" and designed in part to protect the federal budget. (*Sierra-Bay Fed. Land Bank Assn.* v. *Superior Court, supra,* 227 Cal.App.3d at p. 335.) It found that allowing a private right of action under state law would "stand as an obstacle to the accomplishment of the full purposes that the federal law seeks to achieve." (*Id.* at p. 332.) The court cited *Elsworth* v. *Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 548-552 [208 Cal.Rptr. 874, 691 P.2d 630], as authority for holding that a private right of action under state law cannot be allowed if it would stand as an obstacle to the federal law. (*Sierra-Bay Fed. Land Bank Assn.* v. *Superior Court, supra,* 227 Cal.App.3d at p. 335.) Even a cursory reading of *Elsworth* discloses that it is an implied preemption case in which the court applied traditional preemption principles and concluded that there was no implied preemption of state law claims by federal law. We also read *Sierra-Bay* as an implied preemption case. We find it distinguishable from the instant case, which involves express preemption principles. Furthermore, we do not find settlement practices on residential loans to be uniquely federal, and we do not find that a private right of action under state law would stand as an obstacle to achieving the purposes of RESPA.

## IV. DISPOSITION

The petition for writ of mandate is denied. Costs of this proceeding are awarded to real parties in interest.

Turner, P. J., and Godoy Perez, J., concurred.